1998 OK 37

David LANMAN, Petitioner,

v.

OKLAHOMA COUNTY SHERIFF'S OFFICE, and the Workers' Compensation Court, Respondents.

No. 87628.

Supreme Court of Oklahoma.

May 12, 1998.

G. Patrick Garrett, Oklahoma City, for Petitioner.

Aletia Haynes Timmons, Assistant District Attorney, Oklahoma City, for Respondent.

OPALA, Justice.

¶1 The single issue on certiorari is whether the three-judge panel's [panel] decision that claimant's injury did not arise out of and in the course of his employment stands supported by competent evidence. We answer in the affirmative.

## I

### THE ANATOMY OF LITIGATION

¶2 David Lanman [Lanman or claimant] was employed as a *reserve officer* for the Oklahoma County Sheriff's Office [sheriff or employer]. He was assigned to a position of "outside rover." His duties consisted primarily of (a) *patrolling* the outer perimeter of the county jail to prevent escapes, (b) *providing* security for the jail, county courthouse building, employee parking lot and surrounding areas and (c) *transporting* prisoners between jails and to obtain medical services.

¶3 On July 22, 1995 Lanman arrived at work at 6:00 p.m. for a thirteen-hour shift. He was in uniform, armed, and in a marked patrol car. The car was equipped with one radio frequency, which allowed him to call and hear only those calls that were transmitted by the sheriff's dispatcher. Around 11:00 p.m., Lanman was in his patrol car *en route* to dinner when he heard *on his personal police scanner* a radio transmission from an Oklahoma City Police Department [OCPD] officer. The transmitting officer was advising the OCPD dispatcher that he had heard gunshots and was going to check out the area, which was approximately eight blocks from claimant's location. In a second transmission, the same officer stated that he was "out on two subjects." Without notifying the sheriff's dispatcher, claimant proceeded to the transmitting officer's location to provide backup. Before arriving at the scene, claimant broadsided a vehicle that crossed into his path.

¶4 Lanman, who received injuries in the accident, brought this compensation claim. Employer maintained that Lanman's injury did not "arise out of" and "in the course of" his employment. The trial judge agreed and denied the claim.[1] The order was affirmed on claimant's appeal to a three-judge panel. Vacating the panel's decision, the Court of Civil Appeals [COCA] held that *the order was not supported by competent evidence.* The claim was remanded with directions to award benefits. COCA's disposition rests on public-policy grounds. The court *reasoned* (a) the claimant *qua* sheriff's officer had a statutory duty "to preserve and enforce public peace;"[2] (b) it was reasonable for claim-

---

1. The trial judge's February 13, 1996 order states in pertinent part:

 " * * * The Court having considered the evidence and records on file, and being well and fully advised in the premises FINDS AND ORDERS AS FOLLOWS:

 –1.–

 THAT claimant did not sustain an accidental personal injury arising out of and in the course of claimant's employment with the above named respondent, as alleged in the claim for compensation filed herein. * * * "

2. COCA relied on the terms of 22 O.S.1991 § 37, which state in pertinent part:

ant to conclude that an emergency situation had arisen which required his immediate intervention; and (c) in attempting to provide backup assistance to the OCPD officer, claimant was carrying out the duties that a sheriff's officer would ordinarily perform in an emergency.

¶5 On certiorari granted upon the employer's petition, we *vacate today COCA's opinion and sustain the panel's order.*

## II

### THE STANDARD OF REVIEW

■■■ ¶6 Whether an employee's injury *arises out of or occurs in the course of* employment presents an issue of fact to be determined by the trial judge.[3] Where there is no conflict in the evidence (and no opposite inferences may be drawn from undisputed proof),[4] the question is one of law.[5] The trial

"The governing bodies of the state, county, city or town, as the case may be, may furnish distinctive uniforms for all sheriffs, deputy sheriffs, policemen, town marshals, peace officers and other officers, whose *duty is to preserve and enforce public peace.* . . ." (Emphasis supplied).

3. *Stroud Municipal Hosp. v. Mooney,* 1996 OK 127, 933 P.2d 872, 874; *Bayless v. Sparkman Livestock Sales,* 1959 OK 36, 350 P.2d 233, 235; *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201, 202.

4. Whenever conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is not one of law, but rather that of fact. *Thomas, supra* note 3 at 203; *Flick v. Crouch,* 1967 OK 131, 434 P.2d 256, 260–61.

5. *Liebmann Arctic Ice Co. v. Henderson,* 1971 OK 35, 486 P.2d 739, 740; *Rush Construction Co. v. Woodward,* 159 Okl. 72, 14 P.2d 409 syl.2 (1930); *Potts v. B & B Tool, Inc.,* 1996 OK CIV APP 77, 920 P.2d 1079, 1080.

6. Controlling language in 85 O.S.Supp.1994 § 26(B) clearly provides that "[t]he decision of the Court [Workers' Compensation Court] shall be final as to all *questions of fact,* and except as provided in . . . [§ 3.6], as to all *questions of law.*" (Emphasis added) In contemporary legal English the italicized text means "findings of fact" and "conclusions of law".
 *Benning v. Pennwell Pub. Co.,* 1994 OK 113, 885 P.2d 652, 654–55; *Owings v. Pool Well Service,* 1992 OK 159, 843 P.2d 380, 382–83; *Lacy v. Schlumberger Well Service,* 1992 OK 54, 839 P.2d 157, 160; *York v. Burgess–Norton Mfg. Co.,* 1990 OK 131, 803 P.2d 697, 699; *Parks v. Norman Mun. Hosp.,* 1984 OK 53, 684 P.2d 548, 549,

judge's non-jurisdictional findings may not be disturbed on review if supported by competent proof.[6] *Evidence in the record, on the basis of which the trier could have reached a contrary conclusion, has no legal impact upon the review process that tests a workers' compensation court's findings.*[7] It is only the absence of competent evidence[8] that makes the tribunal's decision erroneous (as a matter of law) and hence subject to appellate vacation.[9]

## III

¶7 **COMPENSATION LAW'S "ARISING–OUT–OF AND IN–THE–COURSE–OF EMPLOYMENT" DICHOTOMY**

■■■ ¶8 A compensable work-related injury must both arise out of[10] and occur in the course of[11] the worker's employment.[12]

551–52; *Carpenter v. Douglas Aircraft Company,* 1966 OK 218, 420 P.2d 911, 912 syl.2; *Leffler v. McPherson Brothers Transport,* 1964 OK 225, 396 P.2d 491, 493; *Eagle–Picher Company v. McGuire,* 1957 OK 28, 307 P.2d 145, 148.

7. *Iwunoh v. Maremont Corp.,* 1984 OK 8, 692 P.2d 548, 549; *Matter of Death of Sade,* 1982 OK 91, 649 P.2d 538, 540.

8. "Competency" refers to the legal sufficiency of the admitted evidence to support the decision. When applying the any-competent-evidence standard, it is not this court's duty to weigh the adduced evidence. Its task is simply to canvass the facts to determine if the tribunal's decision is supported by competent proof. *Lacy, supra* note 6 at 160–61. See also *Parks, supra* note 6 at 552.

9. *Parks, supra* note 6 at 552; *Chromalloy–American, Okla. Div. v. Wright,* 1977 OK 93, 567 P.2d 71, 73.

10. *American Management Systems, Inc. v. Burns,* 1995 OK 58, 903 P.2d 288, 291; *Thomas, supra* note 3 at 202; *Richey v. Commander Mills, Inc.,* 1974 OK 47, 521 P.2d 805, 808; *Graham v. Graham,* 1964 OK 69, 390 P.2d 892, 893; *Stanolind Pipe Line Co. v. Davis,* 173 Okla. 190, 47 P.2d 163, 164 (1935).

11. *Decker v. Oklahoma State University,* 1988 OK 152, 766 P.2d 1371, 1374; *Thomas, supra* note 3 at 202; *R.J. Allison v. Boling,* 192 Okl. 213, 134 P.2d 980, 982 (1943).

12. The pertinent terms of 85 O.S.Supp.1994 § 3(7)(a) make compensable ". . . only accidental

The two clauses "arise out of" and "in the course of" are not interchangeable.[13]

## The *Arising–Out–Of* Prong

■ ¶ 9 The *arising-out-of* prong contemplates a causal relationship between the act engaged in at the time injury occurs and the requirements of employment. *It calls for an assessment of the interplay of risks to determine if the injury for which compensation is sought has the requisite connection to the job.*[14] Oklahoma jurisprudence recognizes three categories of risk associated with injuries claimed to be compensable:[15] (1) those so uniquely associated with employment that they may be regarded as distinctly *employment related;*[16] (2) those *purely personal* to the worker;[17] and (3) those that are *neutral.*[18] An intermixture of employment-related hazards with those that are strangers to the work milieu might be regarded as a fourth category.[19]

## The *In–The–Course–Of* Prong

■ ¶ 10 The *in-the-course-of* prong, which relates to the time, place or circumstances under which the injury is sustained, *tests whether, at the critical moment, claimant was on a mission for the employer.*[20]

injuries *arising out of* and *in the course of employment* .... Provided, only injuries having as their source a risk not purely personal but one that is reasonably connected with the conditions of employment shall be deemed to arise out of the employment." (Emphasis added.) The quoted text has remained unchanged by the statute's 1995, 1996 and 1997 amendments.

The term "in the course of employment" has been employed in the English law to denote an agent's or a servant's activity in carrying out the work (or authority) assigned by the principal or employer. Loyd v. Grace, Smith & Co. [1912] AC 716. *See also* United Bank of Kuwait Ltd. v. Hammoud; City Trust Ltd v. Levy [1988] 3 All ER 418, [1988]; B.S. Markesinis and R.J.C. Munday, AN OUTLINE OF THE LAW OF AGENCY 6–8 [Butterworths 3d ed.1992]. Oklahoma's compensation law follows closely an English statute modeled after a German prototype of the Bismarck era. 1 Larson, WORKMENS' COMPENSATION LAW, § 5.10 at 33–34.

13. These two distinct elements of a compensable work-related injury are not to be understood as synonymous. *Stroud, supra* note 3 at 874; *American Management, supra* note 10 at 290–91; *Thomas, supra* note 3 at 202; *Richey, supra* note 10 at 807; *Hegwood v. Pittman*, 1970 OK 91, 471 P.2d 888, 891; *Graham, supra* note 10 at 893; *Royster v. McCoy*, 1956 OK 22, 293 P.2d 587, 588.

14. *City of Edmond v. Monday*, 1995 OK 132, 910 P.2d 980, 983; *Fudge v. University of Oklahoma*, 1983 OK 67, 673 P.2d 149, 150.

15. *Odyssey/Americare of Oklahoma v. Worden*, 1997 OK 136, 948 P.2d 309, 311; Michael E. Utter, *Arising Out Of And In The Course Of* ... (a publication of the Oklahoma Trial Lawyers Association, Nov. 1, 1996). *See* 1 Larson's Workmen's Compensation Law § 7.00 at 3–12 (1996): "All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and neutral risks—i.e., risks having no particular employment or personal char-

acter. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance. When employment and personal risks concur to produce injury, the injury arises out of the employment, since the employment need not be the primary cause, but need only contribute to the injury."

16. Risks that are *solely* connected with job performance are *employment related.* 1 Larson's Workmen's Compensation Law § 7.10 at 3–12 to 3–13 (1996).

17. Among personal risks are crimes intentionally inflicted upon the employee (who happens to be on the job) by persons who harbor personal ill will. In the latter category, the employment is irrelevant to the harm suffered. 1 Larson's Workmen's Compensation Law § 7.30 (1996), at 3–13 to 3–14.

18. The so-called *neutral risks*, such as weather conditions, which are neither distinctly occupational nor personal, present fact questions to be resolved in each case. *Thomas, supra* note 3 at 203.

19. 1 Larson's Workmen's Compensation Law § 7.40 at 3–14 to 3–15 (1996).

20. *Edmond, supra* note 14 at 983; *Decker, supra* note 11 at 1374; *Fudge, supra* note 14 at 150.

The second prong's factual determination—whether at the critical time and place the injured claimant was performing the duties of his employment—*is distinguishable from* the issue whether the claimant stood in an employment relationship to the respondent. The latter calls for a *jurisdictional assessment* which mandates

An employee is deemed to have deviated from the course of employment when that individual embarks on a purely personal errand or *one that takes the worker beyond the assigned perimeter of the claimant's mission for the employer.*[21] Only the second prong— that of *in the course of employment*— is implicated by the record on review. Nobody questions that had the claimant's pursuit of the shooting incident been within his mission for the employer, the traffic accident that ensued could be considered an employment-related risk.[22]

 ¶ 11 Although the panel's order does not state whether its denial rests either on the *arising-out-of* prong or solely on the *in-the-course-of* prong, we need not remand this cause for a more specific finding.[23] This is so because the *only issue formed by the evidence dealt neither with the accidental character of the injury nor with the injury's relation to the risk of on-the-job hazards, but solely with whether the servant, at the critical time and place, was outside the scope of his employment. Implicit in the denial is that the tribunal found the servant had left that mission.*

de novo review of the worker's contested status. *Mahan v. NTC of America*, 1992 OK 8, 832 P.2d 805, 806. For a discussion of the conceptual and historical underpinnings for Oklahoma's appellate de novo examination of compensation claimant's employment status, see *Mahan, supra* at 807–810 (Opala, C.J., concurring).

21. Oklahoma's jurisprudence does not allow compensation for injuries to a servant who deviated from an assigned destination on a personal errand. *See Edmond, supra* note 14 at 983; *Breckenridge v. Bray Lines*, 1989 OK 120, 782 P.2d 909, 910; *Qualls Transfer v. Cummings*, 1972 OK 159, 505 P.2d 183, 185; *Anderson v. Allis–Chalmers Manufacturing Company*, 1963 OK 222, 387 P.2d 479, 482; *Bayless, supra* note 3 at 235.

22. *Stroud, supra* note 3 at 874.

23. The Workers' Compensation Court is required to make specific findings of ultimate facts responsive to the issues formed by the evidence as well as conclusions of law upon which its order is to be rested. *Benning, supra* note 6 at 655; *Carpenter, supra* note 6 at 912; *Leffler, supra* note 6 at 493; *Wiles v. City of Stroud*, 1964 OK 190,

## IV

¶ 12 **THE RECORD SUPPORTS THE PANEL'S FINDING THAT CLAIMANT'S INJURIES WERE NOT SUSTAINED *IN THE COURSE OF* HIS EMPLOYMENT**

### *The Employer's Theory*

 ¶ 13 According to employer, Lanman was on a personal mission at the time that his injuries were sustained. As a reserve officer, he had received minimal law enforcement instruction. He was not trained to respond to emergency calls.[24] Lanman's vehicle had no overhead lights, sirens or emergency equipment. The car's radio had but a single channel from the car to the sheriff's dispatcher. The OCPD calls could not be heard from that radio. The regularly used radio and emergency equipment had been removed from the outside rover cars to prevent these car drivers from responding to calls beamed by sources other than the sheriff's dispatcher. Lanman was listening to his *personal police scanner* when he heard the police officer's first report to the OCPD dispatch.[25] The officer requested no backup before leaving his vehicle to investigate the gunshots heard in the area. According to the employer, Lanman had willfully violated

· 395 P.2d 404, 406. When these elements are not present in a panel's order or are too vague and uncertain for judicial interpretation, we will not hypothesize about the evidence upon which the tribunal may have relied to arrive at its decision. *Benning, supra* note 6 at 655; *Brookshire v. Knippers Plumbing Company*, 1964 OK 67, 390 P.2d 887, 889.

24. Lanman had been trained at the Oklahoma County Reserve Sheriff's Academy. His training did not include the duties of either a patrol deputy or an outside rover (claimant's current assignment at the time of the incident). A reserve deputy assigned to the patrol division is required to have specialized training. Before a patrol deputy can answer emergency calls, he must attend a weekend course with a special instructor and complete sixteen rides with a full-time deputy or certified reserve deputy. He is then allowed to patrol a designated district and take assigned calls from the sheriff's dispatch.

25. According to the Oklahoma County undersheriff, Lanman had not been told by anyone in the sheriff's office that he could use his personal scanner in a county vehicle.

the sheriff's policy and procedure. Two months before the incident Lanman had been instructed (a) not to provide backup service for any OCPD calls unless he was specifically dispatched and (b) to call in his location and destination before taking any kind of action outside the perimeter of the county jail or of the county courthouse building. Claimant left the assigned area without reporting by radio to the sheriff's dispatcher either his location or plans. He was about eight blocks away from his assigned post—traveling over the posted speed limit—when, after failing to yield or slow down at a stop sign before entering the intersection, his vehicle broadsided another car.

## The Claimant's Theory

¶ 14 Lanman argues that a uniformed reserve deputy sheriff has a statutory duty to "preserve and enforce public peace," citing 22 O.S.1991 § 37.[26] According to Lanman, about a year before the accident, the chief of the reserve division had advised him orally that whenever he was in uniform and driving a marked police unit, he must judge each situation for himself.[27] He had received no written policies or procedures describing his duties as an outside rover. In order to fulfill his duty as a uniformed officer, Lanman urges, he was required to respond whenever an emergency situation should arise. When he attempted to provide backup, Lanman acted on the belief that an OCPD officer's life might be in danger. The possibility that he could be involved in an accident while driving the patrol car, Lanman submits, is plainly an employment-related risk causally connected to the injury he sustained.

¶ 15 Although claimant insists the facts are undisputed, the record reveals a sharp disagreement over the scope of a reserve officer's duties. If Lanman's proof is accepted as credible, he had the discretion to respond to any situation he believed to be an emergency and to leave his assigned post without first clearing that action with the dispatcher. On the other hand, if the sheriff's evidence is believed, the claimant's action demonstrates what is known in agency law as a detour or deviation from the course of employment.[28] According to the sheriff's proof, a reserve officer assigned as an *"outside rover"* is restricted to providing security for the jail and for the surrounding county buildings and has no discretion to deviate from those duties without clearance from the sheriff's dispatcher. These restrictions, we are told, are necessary because an outside rover is not trained to respond to emergency situations nor does the vehicle assigned to that duty have the requisite equipment. When patrolling the county jail as an outside rover, this uniformed reserve officer—the claimant in this case—cannot hence be deemed to have been on a mission for the employer at the critical time in question because he collided with another car while speeding toward a shooting scene for an investigation that had not been cleared by the dispatcher.

¶ 16 Even if we assumed that the evidence was uncontroverted, the record, taken as a whole, indicates the presence of two equally reasonable but conflicting (or inconsistent) inferences that may be drawn. The tribunal chose one of the two that were available.[29] This court cannot impose on the trial

26. For the pertinent provisions of 22 O.S.1991 § 37, see *supra* note 2.

27. According to Lanman, the conversation with his chief occurred after he had been asked to explain why he had made a "traffic stop" while working as an "outside rover". After relating that he believed the driver was under the influence of alcohol, Lanman asked his chief how he should handle that type of situation—*i.e.,* "when [he sees] something ... just flat out in front of" him.

28. *Sparkman, supra* note 3 at 235.

29. One inference that may be drawn is that (a) claimant had been instructed (by the chief of his

reserve division) to make a judgment call about what action to take whenever an emergency situation should unfold before him; (b) that instruction was not superseded by a later directive requiring claimant to receive clearance from the dispatcher before providing backup service for an OCPD call; and (c) the scenario that developed on the critical night was an emergency contemplated by the earlier directive. Another possible conflicting inference is that the sheriff's office did not want claimant to respond to any OCPD calls under any situation without advance clearance because (a) claimant was not trained to respond to emergency situations, (b) his vehicle did not have the necessary safety equipment; and (c) jail security would be compromised if the

tribunal its own choices when two or more theories stand supported by competent evidence or when the facts stand disputed. It is for the trier to decide which theory is more cogently proved by the record. Competent proof supports the tribunal's finding that, at the critical time and place, claimant was not performing the duties of his employment. That decision is not vulnerable to appellate vacation.

## SUMMARY

¶17 The employer's responsibility for compensation is governed by the policy provided in the Workers' Compensation Act. For settlement of liability under the Act we must look to the prerequisites of that enactment.[30] On this record, competent evidence amply supports the panel's critical determination that claimant's injuries were not sustained in the course of his employment. We are hence powerless to disturb the panel's order denying the claim.

¶18 On certiorari granted upon the respondent's petition, the Court of Civil Appeals' opinion is vacated and the claim's denial by the Workers' Compensation Court is sustained.

¶19 KAUGER, C.J., and HODGES, LAVENDER, SIMMS, HARGRAVE, ALMA WILSON and WATT, JJ., concur.

¶20 SUMMERS, V.C.J., concurs in part and dissents in part.

---

claimant were to abandon his post without first notifying the dispatcher.

**30.** Because the panel's determination rests on competent evidence, the appellate court was duty-bound by the standards of *Parks, supra* note 6 at 549, to leave the factual finding undisturbed.