2000 OK CIV APP 14

**EASTERN STATE HOSPITAL, Oklahoma Department of Mental Health, and The State Insurance Fund, Petitioners,**

v.

**Jeannie M. SWINEHART, and The Workers' Compensation Court, Respondents.**

No. 93,067.

Court of Civil Appeals of Oklahoma, Division No. 4.

Nov. 2, 1999.

---

Kristen Blue, Fisher, Feldman, Franden, Woodard & Farris, Tulsa, Oklahoma, For Petitioners.

Timothy J. Bates, Chelsea, Oklahoma, For Respondents.

## MEMORANDUM OPINION

GOODMAN, V.C.J.

¶ 1 This is a proceeding to review an order of a Workers' Compensation Court three-judge panel affirming the trial court's order awarding benefits based upon a finding that the claimant was injured while on a dual purpose mission. Based upon our review of the record and applicable law, we sustain the order.

I

¶ 2 Claimant Jeannie Marie Swinehart filed her Form 3 alleging she injured her right wrist when she "[t]ripped over parking curb and fell landing on right wrist" during the course of her employment as a Licensed Practical Nurse with employer Eastern State Hospital. She sought benefits for temporary total disability and permanent partial disability. The employer alleged that at the time of the injury the claimant was on a personal mission, and therefore the injury did not arise out of, and in the course of, the claimant's employment.

¶ 3 The trial court held a hearing on the matter January 12, 1999. The fact that the claimant was injured on the day in question is not disputed. The dispute is whether the injury is work related, and thus compensable.

¶ 4 The claimant testified that on the day of the injury, she took her 30–minute lunch break and walked to her vehicle parked in the employer's parking lot where employees were required to park. She and a co-worker intended to drive to a canteen located on the employer's grounds. It was a hot August afternoon, so the claimant started the vehicle and turned on the air conditioner to cool the interior. As she did, a "male patient approached me and he was wanting money for cigarettes or a pop, which they commonly do." The claimant testified:

> I got a little apprehensive about him being by the truck because we have had incidents where patients have went AWOL, or attempted to get into staffs [*sic*] vehicles. So I chose to just—there was a cup in my truck, I picked up the cup, I was looking for a way to get away from the vehicle, to get him away from my vehicle and back up on [the] grounds where he belongs.
>
> So I just locked the truck up. I was walking up towards the building to where the dumpsters were at. I was just looking for a reason to get away from the vehicle. And on walking up to the vehicle, he was walking behind me, and I was watching him, and he kept asking me for money, and I sternly told him no, and he stopped. And I kept walking, and I was just keeping an eye on him because I wasn't for sure what he would do; I didn't not know what his intentions were, and I tripped—while watching him, I tripped over the curb, and when I fell and I caught myself with the right wrist.

She said patients at the facility have free access to roam the grounds, but patients "are instructed to stay out of the parking lots, due to the fact of AWOL risk . . . ." She continued:

> And that's part of our job requirements, is to make sure that they are staying out of the parking lots or, you know, back up on grounds where they belong, so we don't have AWOL risk, or risk of them getting

injured or other staff members getting injured by an unstable patient.

> . . . .
>
> I felt like I was doing what was required of me. For one, he was out in the parking lot where he didn't belong.
>
> Yes, I did have a fear. I had a personal fear of not knowing what his intentions were, but I felt like I was in the line of duty of getting him back up to where all the other patients were smoking.
>
> . . . .
>
> [T]hey had, like, little smoke porches in the back, and, like, every two hours the patients get to go out there and smoke.
>
> Normally there's staff members with them, but there is some patients that have ground freedoms that—and I'm assuming, I'm not for sure, that he was one, because I didn't see any staff members out there with the patients.
>
> . . . .
>
> There is a security guard on duty. There is one security guard on duty for, you're talking, approximately two hundred and forty something patients; that's why they ask us to monitor these patients.
>
> Our job is, if we see a patient out in the parking lot, or if we see a patient walking towards the gate, our job is to notify the security guard after we get the patient back to where they belong.

She said she "didn't know what the patient's intentions were, but I also felt I needed to get him back to where he belonged, up on the grounds. . . . I said no I don't have any money to give you, and you need to go back up there where the other patients are at, that he doesn't belong in the parking lot . . . . regardless of my job, if I went to work every day and my job duty was to pass medication and that's it, I don't need to be there. My job duties are there to look out for the welfare of the patients." In an attempt to impeach the claimant's credibility, the employer recited an excerpt from the claimant's deposition wherein she testified:

> It was hot, so I turned on the air conditioner and I grabbed a cup just to get away from the truck for a while, while it cooled down, and to get the patient away from my

truck; I grabbed a cup and was walking to the dumpster.

In the meantime, the patient was still asking me for money, for pop and cigarettes; I rudely told him I didn't have any, didn't have any and wasn't going to give him any. As I walked to the dumpster, he turned to walk up the hill. I was wondering if when I turned around he was still going to be there at my vehicle wanting money, not thinking, is when I tripped and fell on the curb.

At the time of the fall, the patient was standing approximately 5 feet from the claimant and asked if she needed assistance.

¶ 5 The trial court found that the "claimant was on a dual purpose mission at the time of her injury and that her injury arose at least in part out of a risk attributable to the conditions of her employment. . . ." The employer appealed to a three-judge panel, which affirmed the award May 10, 1999. The employer seeks our review.

## II

¶ 6 The employer contends the trial court erred in finding the claimant sustained a compensable injury. We disagree.

▮▮▮ ¶ 7 A compensable work-related injury must both (1) occur in the course of and (2) arise out of the worker's employment. *American Management Systems, Inc. v. Burns,* 1995 OK 58, 903 P.2d 288. Whether an injury arises out of and in the course of a claimant's employment is an issue of fact to be determined by the Workers' Compensation Court and, where there is any competent evidence to support the court's order, we must sustain the order. *City of Edmond v. Monday,* 1995 OK 132, 910 P.2d 980. When conflicting or inconsistent inferences may be drawn from undisputed facts, the issue is not one of law, but rather of fact. *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201. The trial court's non-jurisdictional findings may not be disturbed on review if supported by competent evidence.

▮▮▮ ¶ 8 "In the course of employment" refers to the "time, place or circumstances under which the injury is sustained." *American Management Sys., Inc. v. Burns,* 1995

OK at ¶ 5 n. 3, 903 P.2d at 290. In this matter, the argument of the parties demonstrates that conflicting inferences may be drawn with respect to the trial court's determination that the claimant was engaged in a dual purpose mission at the time of the injury. As such, the question of whether the claimant was injured in the course of her employment presented a fact question for the trial court. We find competent evidence supports the conclusion the claimant was injured in the course of her employment as she lured the patient from a forbidden area to an area where he was permitted to be.

▮▮▮ ¶ 9 An injury "arises out of employment" if there is a causal relationship between the act the claimant is engaged in when the injury occurred and the requirements of the claimant's employment. *Fudge v. University of Oklahoma,* 1983 OK 67, ¶ 4, 673 P.2d 149, 150. "Oklahoma jurisprudence recognizes three categories of risk associated with injuries claimed to be compensable: (1) those so uniquely associated with employment that they may be regarded as distinctly *employment related*; (2) those *purely personal* to the worker; and (3) those that are *neutral*." *Lanman v. Oklahoma County Sheriff's Office,* 1998 OK 37, ¶ 9, 958 P.2d 795, 799 (footnotes omitted).

¶ 10 In *Gardens at Rivermont v. Valadez–Baird,* 1999 OK CIV APP 28, ¶ 11, 978 P.2d 362, 365, we held that the claimant was in the course of her employment when she experienced her injury. We held, however, that the injury did not arise out of the claimant's employment because when she entered through the patio doors, her injury resulted from a *purely personal risk* attributable to a pre-existing physical condition. *Valadez–Baird* is thus distinguishable because the claimant in the matter before us encountered a *neutral risk* consisting of a curb in the parking lot, not a *purely personal* pre-existing condition.

¶ 11 In *Odyssey/Americare of Oklahoma v. Worden,* 1997 OK 136, ¶ 21, 948 P.2d 309, 313, the claimant was injured when she encountered a neutral risk. The court vacated an award of benefits, stating:

Claimant encountered the neutral risk of wet and therefore slippery grass due to rain. Her employment exposed her to no more risk of injury from wet grass than that encountered by any member of the general public.

¶ 12 In the matter before us, the risk to which the claimant was exposed—the curb— was likewise a *neutral risk.* The claimant admittedly had concern for her personal safety, and wanted the patient away from her vehicle. However, she also had employment-related duties to protect the welfare of the patients, and to make sure patients did not wander into, or remain in, restricted areas, such as parking lots. In furtherance of those duties, the claimant left her vehicle and walked to the trash dumpster to dispose of a cup, but also to lure the patient from such a restricted area. As she approached the curb, she turned to determine whether the patient was still following her or had returned to the restricted area. When she did, she encountered the neutral risk posed by the curb, and fell. But for her employment-related duties, the claimant would not have diverted her sight from any obstacles in her path. The trial court found that the claimant's injury arose out of her employment. We find competent evidence supports the conclusion that the claimant's employment exposed her to a greater likelihood of injury from the neutral risk posed by the curb than that encountered by a member of the general public, and thus her injury arose out of her employment.

### III

¶ 13 The trial court found the claimant sustained a work-related injury arising out of and in the course of the claimant's employment. We hold competent evidence supports the order.

¶ 14 ORDER SUSTAINED.

¶ 15 RAPP, J., and TAYLOR, J., concur.