2003 OK CIV APP 13

**DOLLAR GENERAL CORPORATION, Own Risk, Petitioner,**

v.

**Leah T. MEADOWS, and The Workers' Compensation Court, Respondents.**

**No. 97,322.**

Court of Civil Appeals of Oklahoma, Division No. 2.

July 16, 2002.

Certiorari Denied Jan. 28, 2003.

---

David B. Custar, J.R. Schneider, Pierce, Couch, Hendrickson, Baysinger & Green, Oklahoma City, for Petitioner.

Charles Simons, Boettcher, Ryan, Martin & Bisher, Oklahoma City, for Respondent.

Opinion by TOM COLBERT, Presiding Judge.

¶ 1 Employer, Dollar General Corporation, seeks this court's review of an order of the workers' compensation court awarding benefits to Claimant, Leah T. Meadows. The issues on review are whether the trial court erred in 1) finding that Claimant's injury arose out of and in the course of her employment and 2) awarding Claimant permanent partial disability. Upon review of the record

and applicable law, we conclude that the court did not err and sustain its order.

## BACKGROUND

¶ 2 Claimant worked at Dollar General as an assistant manager. On May 29, 2001, she was operating the cash register when Bill Bewley, a customer with whom Claimant had been briefly acquainted, approached her to ring up a sale of motor and transmission oil. Bewley questioned Claimant about a third party and then verbally assaulted her. After Claimant had rang up the sale, Bewley threw the bag containing the oil at her, striking her in the right eye. Claimant did not immediately notice any problems with her vision but gradually began to realize that she could not see out of her right eye. Claimant was diagnosed with a detached retina and underwent surgery on June 12, 2001. Prior to the assault, Claimant's uncorrected vision in her right eye was 20/200 and she wore contact lenses in both eyes. After the surgery, Claimant's uncorrected vision remained 20/200.

¶ 3 Claimant's physician, John W. Ellis, M.D., opined that, as a result of the accident, Claimant suffered 36% permanent partial disability to the right eye. He indicated that his impairment rating "is over and above any prior impairments." George R. Cornelius, M.D., opined that Claimant lost 16.4% of the vision and 20% of the visual field in her right eye.

¶ 4 Claimant testified that, as a result of the injury, she has to wear a stronger contact lense in her right eye, has air bubbles in the eye, has problems with depth perception, and has difficulty driving at night. She also testified that she now has to wear reading glasses.

¶ 5 The trial court found that Bewley struck Claimant after she had rang up the sale and that Claimant "did nothing by words or act to initiate the assault." The court determined that Claimant sustained an accidental personal injury to her right eye arising out of and in the course of her employment. The court awarded Claimant temporary total disability for five weeks and $7,949.76 for a 20% permanent partial dis-

ability to her right eye. From the award of permanent partial disability, Employer appeals.

## STANDARD OF REVIEW

¶ 6 Generally, the issue of whether an employee's injury arises out of and in the course of employment presents an issue of fact to be determined by the workers' compensation court. *Lanman v. Okla. County Sheriff's Office*, 1998 OK 37, ¶ 6, 958 P.2d 795, 798. Therefore, the court's decision on this issue is reviewed under the any-competent-evidence standard. *Thomas v. Keith Hensel Optical Labs*, 1982 OK 120, ¶ 7, 653 P.2d 201, 203. "Under this standard our responsibility simply is to canvass the facts, not with an object of weighing conflicting proof in order to determine where the preponderance lies but only for the purpose of ascertaining whether the tribunal's decision is supported by competent evidence." *Parks v. Norman Mun. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 552.

## ANALYSIS

¶ 7 To be compensable, a work-related injury must both occur in the course of and arise out of the worker's employment. *Am. Mgmt. Sys., Inc. v. Burns*, 1995 OK 58, ¶ 5, 903 P.2d 288, 290–91. "In the course of employment" refers to the "time, place or circumstances under which the injury is sustained." *Id.* at ¶ 5 n. 3, 903 P.2d at 290 n. 3. An injury "arises out of employment" if there is a causal relationship between the requirements of the claimant's employment and the act in which the claimant is engaged when the injury occurs. *Thomas*, 1982 OK 120, ¶ 5, 653 P.2d at 202.

¶ 8 "Only injuries having as their source a risk not purely personal but one that is causally connected with the conditions of employment shall be deemed to arise out of the employment." 85 O.S.2001 § 3(12)(a). There are three categories of injury-producing risk that can arise in the course of employment: (1) risks solely connected to employment, which are compensable; (2) purely personal risks, which are not compensable; and (3) neutral risks, which are neither

uniquely employment-related, nor purely personal, and which may or may not be compensable. *Odyssey/Americare of Okla. v. Worden,* 1997 OK 136, ¶ 6, 948 P.2d 309, 311.

■ ¶ 9 Employer asserts Claimant's injury did not arise out of her employment because the assault was motivated solely by personal animosity. Employer cites *Mullins v. Tanksleary,* 1962 OK 239, 376 P.2d 590, and *Burrell v. Prewitt,* 1968 OK 128, 445 P.2d 279, in support of its assertion that an injury inflicted by a third-party aggressor, motivated purely by personal animosity between the aggressor and a claimant, is not compensable. The claimants' injuries in *Mullins* and *Burrell* were inflicted by third-party aggressors. However, in both cases, the Supreme Court concluded that the claimants' injuries were compensable.

¶ 10 In *Mullins,* a third party assaulted the claimant because he thought the claimant had called him "a bad name." *Mullins,* 1962 OK 239, ¶ 2, 376 P.2d at 591. The claimant hardly knew the assailant before the incident and there was no animosity between the two. *Id.* The Court stated, "When a wilful injury is inflicted by a third party, who is the aggressor, upon a workman discharging the tasks he is engaged to perform, and the assault is not motivated solely by personal animosity, wholly disconnected from the employment, the resulting injury is regarded as accidental and as having arisen out of and in the course of employment." *Id.* at ¶ 5, 376 P.2d at 592.

¶ 11 In *Burrell,* a filling station employee was assaulted by a former employee. The Court found that the claimant's injury was compensable because there was no personal animosity between the assailant and the claimant prior to the incident. *Burrell,* 1968 OK 128, ¶¶ 12, 14, 445 P.2d at 281. The Court reached this conclusion despite the fact that the men had argued earlier in the day; the claimant had said to the assailant, "All right, if you want to fight let's get it over with"; and the assailant had left the premises, returned thirty minutes later, and started to hit the claimant. *Id.* at ¶¶ 6–7, 445 P.2d at 280. A key factor in the Court's ruling was that the assailant was clearly the aggressor and the claimant did not give the assailant

any provocation for striking him. *Id.* at ¶ 8, 445 P.2d at 280. In both *Mullins* and *Burrell,* the Supreme Court opined that any reasonable doubt as to whether the accident arose out of and in the course of employment should be resolved in favor of the claimant. *Id.* at ¶ 14, 445 P.2d at 281; *Mullins,* 1962 OK 239, ¶ 9, 376 P.2d at 592.

¶ 12 Here, Claimant testified that she was "barely" acquainted with Bewley. There was no evidence that she had ever had a confrontation with Bewley prior to the incident on May 29, 2001, or that there had been animosity between the two. The trial court concluded that Claimant did nothing to provoke the attack. Bewley injured Claimant with products that she rang up for sale to him. Based on the holdings of *Mullins* and *Burrell,* we find that the trial court did not err in finding that Claimant's injury arose out of and in the course of her employment.

■ ¶ 13 Employer next asserts that the trial court erred in awarding Claimant permanent partial disability because she had sustained prior permanent loss of vision. Prior to the assault, Claimant's uncorrected vision in her right eye was 20/200. Employer contends that, because vision of 20/200 amounts to industrial blindness under Workers' Compensation Court Rule 33, 85 O.S. 2001, ch. 4, app., Claimant cannot recover.

¶ 14 Rule 33 provides the criteria for measuring and calculating the percentage of eye impairment in a single eye and recognizes that prior case law has defined industrial blindness as 20/200. However, precedent from Oklahoma's appellate courts supports the trial court's award of permanent partial disability.

¶ 15 In *Standard Testing and Engineering Co. v. Bradshaw,* 1968 OK 62, 442 P.2d 337, an employer asserted that, because the claimant was industrially blind prior to his on-the-job accident, he was not entitled to recover for any additional disability to his eye caused by the accident. The Supreme Court rejected the employer's argument and reiterated its previous holding that where an eye "is lost by injury, and at [the] time there was sufficient vision (in the eye) for satisfactory performance of labor, the award must

be based upon loss of eye." *Id.* at ¶ 8, 442 P.2d at 339 (citing *Forrest E. Gilmore Co. v. Booth,* 1932 OK 150, 8 P.2d 717).

¶ 16 The *Bradshaw* Court concluded:

The question of a man's permanent disability is not to be determined solely by technical formulas defining percentages of disability but is dependent to a large extent on the ability of the individual to perform continuously some substantially gainful occupation notwithstanding his disability.

Here we have a man technically defined as blind in both eyes but with the aid of corrective lenses performing efficiently the same tasks as a man with normal vision. He had some vision in his left eye without corrective lenses. He could count fingers at a distance of three feet. Without his glasses he could observe objects in a room. He sustained the present accident and the sight of his left eye was industrially destroyed. Without glasses he can see at a distance of only one foot. With the best corrective lenses his vision in the left eye is limited to 20/200.

*Id.* at ¶¶ 9–10, 442 P.2d at 339 (citations omitted).

¶ 17 In *Protein Technologies International/Ralston Purina v. Hammock,* 1994 OK CIV APP 21, 876 P.2d 728, the employer contended that the trial court erred in awarding compensation for a detached retina because the claimant had been industrially blind before the on-the-job injury. The Court of Civil Appeals rejected the employer's argument and reiterated the Supreme Court's holding in *Bradshaw. Id.* at ¶ 5, 876 P.2d at 730.

¶ 18 Employer does not argue that Claimant was unable to perform her job duties prior to the on-the-job injury; it simply argues that there was no additional disability over and beyond the preexisting disability. It is clear that Claimant suffered additional injury to her right eye as a result of the accident. She required a stronger prescription for her right contact lens, as well as reading glasses, and had problems with air bubbles on her eye and with depth perception. Dr. Ellis concluded that Claimant suffered 36% permanent partial disability to her right eye over and above any prior impairments. Thus, we cannot say that the trial court erred in awarding permanent partial disability based on the fact that Claimant's corrected eyesight was affected by the accident. There is competent evidence to support the trial court's finding that Claimant suffered injury which amounted to a loss of vision greater than her loss of vision prior to the accident.

¶ 19 SUSTAINED.

RAPP, J., and GOODMAN, J., concur.