2006 OK 46

**BRONSON TRAILERS & TRUCKS, Credit General Insurance Company, Petitioners/Counter–Respondents,**

v.

**Richard D. NEWMAN, Sr., Respondent/Counter– Petitioner**

and

**The Workers' Compensation Court, Respondent.**

No. 101,458.

Supreme Court of Oklahoma.

June 27, 2006.

Tracy Pierce Nester, Gary D. Long, Oklahoma City, for Petitioners/Counter–Respondents.

Duke Halley, Woodward, OK, for Respondent/Counter–Petitioner.[2]

OPALA, J.

¶1 Today's certiorari presses two questions for our decision: (1) Is a trial judge's initial award of benefits, made in accordance with the provisions of 85 O.S. Supp.1997 § 16(D),[3] a final order that a worker is permanently totally disabled? and (2) Did the trial judge impermissibly terminate that order? We answer both questions in the negative.

## I.

### ANATOMY OF THE LITIGATION

¶2 Claimant (claimant or Newman), a general repairman,[4] sustained an accidental on-

---

2. Identified herein are only those counsel for the parties whose names appear on the certiorari briefs.

3. For the terms of § 16(D) see *supra* note 1.

4. Although claimant has worked as a mechanic he has no specific training in that area. We, hence, refer to his work as that of a general repairman.

the-job injury to his right hand (and consequential injury to his left foot)[5] while he was employed by Bronson Trailers and Trucks (together with General Credit Insurance Company to be known as employer). Employer did not dispute the injury arose out of claimant's employment and paid temporary total disability (TTD) benefits and medical expenses. Claimant returned to work but testified he was unable to continue on a permanent basis because of persistent problems with his affected limbs. Newman, who is illiterate, claimed he could no longer perform manual labor—the only work for which he is qualified—and sought permanent total disability (PTD) benefits.

¶ 3 On 28 December 2001 the trial judge awarded claimant what here will be referred to as § 16(D) benefits (compensation commensurate with TTD benefits that is to be paid during the period of vocational rehabilitation with a view to evaluating permanent total disability), in accordance with the terms of 85 O.S. Supp.1997 § 16(D).[6] The judge "reserved" (withheld) for a future date determination of claimant's permanent disability status, pending his completion of a court-ordered rehabilitation program. Following a hearing on 27 May 2004 to re-evaluate claimant's status, the trial judge found Newman to be permanently partially disabled.[7] Both parties sought review of this order. COCA, by an unpublished opinion, sustained the trial judge's order.[8] Claimant alone seeks certiorari review.

## II.

### CLAIMANT'S CERTIORARI ARGUMENTS

■ ¶ 4 Newman's certiorari petition urges the trial judge's 2001 order that awards him benefits in accordance with the provisions of § 16(D) is a final determination that he is permanently totally disabled unless he can be rehabilitated. The 2004 order that finds him to be permanently partially disabled is, hence, an impermissible collateral attack upon the earlier order, which violates the principle of *res judicata.*[9] Claimant asserts that his status remains that of a permanently totally disabled person unless his vocational rehabilitation is 1) successful or 2) unsuccessful because of acts of claimant.[10]

---

5. During surgery, Newman's physician noted smashed arteries in his hand, the result of repetitive use of power tools at work. To repair this damage, an additional surgery was performed. Blood vessels from claimant's left foot were transplanted to his right hand, resulting in a consequential injury to his left foot.

6. The judge's order provided "claimant is awarded 16(D) benefits to ... continue until claimant succeeds or fails in the program or similar type described ..."

 For the terms of § 16(D) see *supra* note 1.

7. An earlier review proceeding was initiated by the employer. The issue before COCA was whether the trial judge correctly determined that claimant may be permanently totally disabled and entitled to § 16(D) benefits. COCA, in an unpublished opinion, sustained the decision of the three-judge review panel that affirmed the trial tribunal's order. These issues are not before the court today.

 The trial tribunal's order was issued 21 October 2004 and a *nunc pro tunc* order followed on 2 November 2004.

8. Employer presented two issues before COCA; neither is before the court today: (1) the trial judge improperly denied it credit for overpayment of § 16(D) benefits and (2) the trial tribunal erroneously awarded § 16(D) benefits to be paid to a date beyond that set for trial. COCA sustained the trial judge's order on all issues presented for review. Resolution of the latter issue was bottomed on the date the order *nunc pro tunc* was filed, not on the date the trial tribunal conducted its hearing.

9. Claimant employs the commonly-used term *"res judicata"* to denote the binding effect an adjudication will have on all other dispositions. The precise legal term of art here is issue preclusion. Its three essential elements include: (1) an earlier decision on the issue, (2) a final judgment on the merits and (3) a cause dealing with the same parties or those in privity with the original parties.

10. Although claimant's briefs do not so specify, we understand that portion of his argument dealing with "unsuccessful rehabilitation due to acts of claimant" to be referencing the terms of § 16(A). Its terms provide:

 * * * "No person shall be adjudicated to be permanently and totally disabled unless first having been evaluated as to the practicability of restoration to gainful employment through vocational rehabilitation services or training. If an employee claiming permanent total disability status unreasonably refuses to be evalu-

## III.

### STANDARD OF REVIEW

 ¶ 5 The first question presented on certiorari calls for resolution of a legal question. Review of contested law is governed by a *de novo* standard.[11] In its re-examination of the trial tribunal's legal rulings an appellate court exercises plenary, independent and nondeferential authority.[12] The second issue pressed here deals with a question of fact. A trial judge's non-jurisdictional finding may not be disturbed on review if supported by competent proof.[13] Record proof, on the basis of which the trier could have reached a contrary conclusion, has no legal impact upon the review process by which a WCC's finding is tested.[14] It is only the absence of competent evidence that makes the tribunal's decision erroneous (as a matter of law) and hence amenable to appellate vacation.[15]

## IV.

### A.

### AN INITIAL AWARD OF BENEFITS IN ACCORDANCE WITH THE PROVISIONS OF § 16(D) IS A TEMPORARY ADJUDICATION THAT STANDS SUBJECT TO CLAIMANT'S RE–EVALUATION FOLLOWING REHABILITATION

 ¶ 6 According to Newman's first assertion, it is *implicit* in law that the 2001

order was a final adjudication of his permanent total disability.[16] This must be so because the order (1) awarded him § 16(D) benefits and (2) does not adjudicate his status to be that of being permanently partially disabled. Claimant cites language in *Mangrum v. Fensco, Inc.*[17] for support of his position that an award of § 16(D) benefits "necessitates an initial determination that vocational rehabilitation is practicable and that the worker is at that time permanently and totally disabled."[18] According to claimant, his legal status must hence be recognized as that of permanent total disability.

 ¶ 7 Newman's reasoning concerning his status is faulty. Simply because one is not adjudicated permanently partially disabled does not *ipso facto* make a worker permanently totally disabled. Any reliance on *Mangrum* is likewise misplaced. That case teaches a compensation claimant who was previously adjudicated permanently partially disabled is not entitled to § 16(D) benefits.[19] Claimant was not initially determined here to be permanently partially disabled. *Mangrum's* holding is inapplicable to the facts presented in today's certiorari.

¶ 8 Neither may some isolated passages of *Mangrum's* text be read to support claim-

---

ated or to accept vocational rehabilitation services or training, permanent total disability benefits shall not be awarded during the period of such refusal, and the employee shall be limited to permanent partial disability benefits only." * * *

11. *Arrow Tool & Gauge v. Mead*, 2000 OK 86, ¶ 6, 16 P.3d 1120, 1122–23; *Neil Acquisition L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, ¶ 5, 932 P.2d 1100, 1103; *Brown v. Nicholson*, 1997 OK 32, ¶ 5, 935 P.2d 319, 321.

12. *Arrow Tool, supra* note 11, at ¶ 6 at 1122–23; *Neil Acquisition, supra* note 11 at ¶ 5 at 1103; *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1084.

13. *Parks v. Norman Munc. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 549–52.

14. *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, ¶ 6, 958 P.2d 795, 798 (citing *Thom-*

as v. Keith Hensel Optical Labs*, 1982 OK 120, ¶ 14, 653 P.2d 201, 203).

15. *Lanman, supra* note 14 at ¶ 6 at 798 (citing *Parks v. Norman Munc. Hosp.*, 1984 OK 53, ¶ 12, 684 P.2d 548, 549–52).

16. The trial judge's 2001 order awards § 16(D) benefits. It makes no finding about claimant's compensation status.

17. *Mangrum v. Fensco, Inc.*, 1999 OK 78, 989 P.2d 461.

18. *Mangrum, supra* note 17 at ¶ 6 at 463.

19. A claimant's permanent partial disability status is evaluated only once by the WCC. *Mangrum, supra* note 17 at ¶ 8 at 463. There is no re-evaluation of a worker's permanent partial disability status. *Mangrum, supra* note 17 at ¶ 8 at 463. The provisions of § 16(D) plainly reveal that its terms apply only to those undergoing rehabilitation for the purposes of evaluating per-

ant's position—that a § 16(D) award is a final order determining one to be permanently partially (or totally) disabled. A thorough reading of its text reveals that under the provisions of § 16(D) claimant's status is transitory. According to *Mangrum*, the initial "award of permanent total disability is essentially 'temporary', in that it is subject to review following vocational rehabilitation ..."[20] The sentence cited by claimant in support of his contrary position—that an award of § 16(D) benefits "[n]ecessitates an initial determination that vocational rehabilitation is practicable and that the **worker is at the time** permanently and totally disabled"[21] (emphasis supplied)—is also impertinent to his legal position. Its reference to "at the time" explicitly denotes the temporary nature of a § 16(D) benefits award.

¶ 9 The goal of any inquiry into the meaning of a legislative enactment is to ascertain and follow its legislative intent.[22] It is presumed that legislative intent is expressed in a statute's text and that the lawmaking body intended that which it expressed.[23] Where the statute is plain and unambiguous, there is no room for judicial construction which would extend its ambit beyond the scope of the plain and unambiguous language.[24] A statute is to be construed as a whole in light of its general purpose and objective.[25]

¶ 10 The terms of § 16(A) plainly contemplate claimant's further evaluation by the trial court will follow to determine his/her permanent disability status. Its text reveals that a claimant is not adjudicated permanently totally disabled until he/she has been evaluated as to "the practicability of restoration to gainful employment through vocational rehabilitation services or training."[26] The terms of § 16(D)[27] do not refer to one's permanent disability status but address the rate of compensation a claimant is to receive during the rehabilitation period. These provisions are free of ambiguity. When read as a whole, all parts of the section clearly express that a claimant who seeks § 16(D) benefits is only initially considered to be permanently totally disabled during the period of rehabilitation, but the final determination of one's permanent disability status is made at the end of that period.[28]

¶ 11 *In short, a trial judge's initial award of benefits in accordance with the provisions of § 16(D) is a temporary determination of a claimant's compensation status pending re-evaluation after vocational rehabilitation is completed. It is not a final adjudication of a worker's permanent disability status.* This is plainly revealed by the statute's text and supported by the disability benefits scheme contained in the Workers' Compensation Act.[29]

## B.

### THE TRIAL JUDGE DID NOT ERR WHEN, AFTER CLAIMANT COMPLETED REHABILITATION, HE WAS RE–EVALUATED AND ADJUDICATED PERMANENTLY PARTIALLY DISABLED

¶ 12 Newman next urges that his § 16(D) benefits may be terminated only when the rehabilitation is (1) successful or (2) unsuccessful owing to claimant's own acts.

manent total disability status. *Mangrum, supra* note 17 at ¶ 8 at 463.

**20.** *Mangrum, supra* note 17 at ¶ 11 at 464 (citing *City of Norman v. Steves*, 1998 OK CIV APP 81, 962 P.2d 655, 657).

**21.** *Mangrum, supra* note 17 at ¶ 6 at 473.

**22.** *Cooper v. State ex rel. Dep't of Public Safety*, 1996 OK 49, ¶ 10, 917 P.2d 466, 468.

**23.** *Nealis v. Baird*, 1999 OK 98, ¶ 55, 996 P.2d 438, 460.

**24.** *Ross v. Peters*, 1993 OK 8, n. 17, 846 P.2d 1107, 1109, n. 17. *TRW/Reda Pump v. Brewing-*

*ton*, 1992 OK 31, ¶ 5, 829 P.2d 15, 20. *Forston v. Heisler*, 1961 OK 198, ¶ 11, 363 P.2d 949, 951.

**25.** *Villines v. Szczepanski*, 2005 OK 63, ¶ 9, 122 P.3d 466, 471 (citing *McNeill v. City of Tulsa*, 1998 OK 2, ¶ 11, 953 P.2d 329, 332).

**26.** For the terms of § 16(A) see *supra* note 10.

**27.** For the terms of § 16(D) see *supra* note 1.

**28.** *Mangrum, supra* note 17 at ¶ 10 at 464 (citing *Steves, supra* note 20 at ¶ 9 at 657).

**29.** The Workers' Compensation Act, 85 O.S.2001 § 1 et seq.

He contends the services provided him were far short of those to be rendered in accordance with the trial judge's order. It was because of this, and not due to any action or inaction on his part, that his rehabilitation was unsuccessful. Because it was unsuccessful there is no basis to change his status from that of one permanently totally disabled to that of permanently partially disabled. The trial judge hence erred when she determined claimant to be permanently partially disabled.

¶ 13 Although COCA agreed that the rehabilitation services were lacking, it noted that the trial tribunal's order made no finding of fact about this matter.[30] It hence concluded this did not serve as an adequate basis on which to predicate trial error. COCA reviewed the record and concluded the trial judge's order is supported by competent evidence.[31]

¶ 14 The record reveals claimant presented evidence that his unsuccessful-rehabilitation outcome was due to the inadequacy of the vocational-rehabilitation services that were provided him.[32] Claimant neither requested a finding of fact on the issue of the adequacy of the rehabilitation services nor did he seek additional services. The sole use of the failure-of-services argument was limited to supporting his status as permanently totally disabled.

¶ 15 **We agree with COCA.** The trial tribunal found Newman participated in the court-ordered rehabilitation program.[33] Its order did not include a finding of fact dealing with the quality of services provided him. When rehabilitation services prove unsuccessful one may not, as a matter of law, draw the conclusion that a worker is hence permanently totally disabled. The trial tribunal's order found "the claimant is not permanently and totally disabled solely as a result of this accident."[34] Neither do the provisions of § 16(A)[35] or (D)[36] restrict the trial tribunal's authority. After evaluating the proof presented, the trial judge is free to find a claimant is only permanently partially disabled. Because there is here competent evidence to support the trial judge's finding, we must sustain her ruling.

## V.

## SUMMARY

¶ 16 A WCC's initial award of § 16(D) benefits is not a final order upon claimant's permanent disability status. It is an interim disposition that a worker is *at that time* temporarily totally disabled and entitled to benefits at the TTD rate during the period a

---

30. In his supplemental brief, respondent states, "the Court of Civil Appeals found the Claimant is illiterate and that 'no actual retraining or educational benefits were provided....' " (Respondent's supplemental brief, p. 4) COCA, as an intermediate court of appellate review, makes no findings of fact. That is solely the trial tribunal's function. A trial judge's findings of fact are binding and conclusive in review proceedings unless they lack support in competent evidence. *Parks, supra* note 13 at ¶ 12 at 551.

31. COCA opinion, p. 10.

32. The 2001 order required claimant to "participate in the program described as Option 6 or a similar type program, ..." This program consists of twenty (20) hours of assessment and job development and/or supported employment. The latter is described as four-to-six weeks (estimating forty hours per week) of training, job coaching, and employee support. (Amerihab report, 20 November 2001, record, p. 132). Program counselors travel throughout Oklahoma to achieve "competitive employment by helping to match the client's abilities and interests with the needs

of local businesses." (Amerihab report, 20 November 2001, record, p. 132). This program was discontinued before the order of mandate was issued. No similar services were then available. (record, exhibit 2, deposition of Amerihab owner, p. 15). In February 2003, the court ordered Amerihab "to reevaluate claimant and ... to provide vocational rehabilitation services ..., in an attempt to return claimant to employment." (record, p. 216)

Claimant argued those services provided by Amerihab were primarily job-search related; retraining and vocational rehabilitation programs were minimal to non-existent.

33. Trial judge's 21 October 2004 order. (record, p. 243).

34. Trial judge's 21 October 2004 order (record, p. 242)

35. For the terms of § 16(A) see *supra* note 10.

36. For the terms of § 16(D) see *supra* note 1.

worker actively participates in and undergoes the court-ordered retraining or job placement program. This status is temporary. A claimant's permanent compensation status is subject to re-evaluation following completion of the rehabilitation in accordance with the terms of § 16(D). The trial judge erred here neither in re-evaluating claimant's status nor in finding him to be permanently partially disabled.

¶ 17 ALL JUSTICES CONCUR.