2006 OK CIV APP 75

**Jimmy L. VEITH and Compsource Oklahoma, Petitioners,**

**v.**

**Kara D. (Vails) OGBURN and The Workers' Compensation Court, Respondents.**

**No. 101,824.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 16, 2006.

Donald A. Bullard, Bullard & Hoehner, P.C., Oklahoma City, OK, for Petitioners.

John Colbert, Ardmore, OK, for Respondent.

Opinion by KEITH RAPP, Vice Chief Judge.

¶ 1 Petitioners, Jimmy L. Veith, employer, and Compsource Oklahoma seek review of an order of a three-judge panel of the Workers' Compensation Court which affirmed the trial court's finding that Claimant sustained a compensable injury. The single issue on appeal is whether Claimant sustained an accidental personal injury arising out of and in the course of her employment.

## BACKGROUND FACTS

¶ 2 Claimant was employed by attorney, Jimmy Veith, as a legal assistant in his law office located in Ardmore, Oklahoma. On the morning of May 20, 2004, Claimant stepped in a hole at the edge of the street and tripped and fell as she was walking from a parking lot to begin her work at the law office. She filed her Form 3 on June 2, 2004, alleging injury to both knees.[1] Veith initially accepted the claim, but later denied that Claimant's injury arose out of and in the course of her employment. Veith maintained that Claimant's injury was not compensable because the risk responsible for her injury was personal and there was no causal connection between her injury and the requirements of her employment.

¶ 3 Testimony at trial revealed that Veith's law office was located in a house that had been converted into a business. A portion of the house's former front yard had been paved to provide a small parking area (four to five spaces) at the front entrance of the law office. Claimant, a six-year employee of

---

1. The Form 2 filed by the office manager lists Oklahoma Bar Association—OBA Group as the employer. The Form 3 lists Jimmy L. Veith, P.C., as employer. The trial court order lists Veith, Jimmy L., as the Respondent, as does the Order on Appeal.

the law office, described Veith's practice as "high volume."

¶ 4 Claimant testified that at the time she started working at the law office both Veith and her immediate supervisor, Delores Jeans, had directed her to park her vehicle in a lot located across the street from the office in order to keep the spaces in front of the law office available for Veith's clients. There was a grassy area behind the office, where some employees parked, but Claimant had never parked there.[2]

¶ 5 The lot across the street where Claimant always parked was owned by a company called Armorite, which, along with other tenants, occupied a building situated on the lot. During the six years Claimant worked at the law office, it was her practice to park in the Armorite lot, walk across the street, and then enter the law office through the front door.

¶ 6 Veith's wife, who acted as his office manager, testified on his behalf. She denied that anyone at the office specifically had directed Claimant to park in the Armorite lot, but did not dispute Claimant's assertions that Veith knew some of his office employees parked there and acquiesced in their use of the lot.

¶ 7 The record contains undisputed evidence that Veith did not own or lease the parking lot and had no responsibility to maintain it. It is also undisputed that (1) Claimant parked in the Armorite lot on a daily basis; (2) one of her co-workers parked there; and (3) at times, Veith's clients parked there. There is no evidence in the record explaining the nature of the relationship between Armorite and Veith.

¶ 8 The trial court found that Claimant sustained an accidental personal injury to her right knee and left ankle arising out of and in the course of her employment and awarded her benefits for temporary partial disability. The trial court denied Veith's "neutral risk" defense based on its finding that Claimant had "parked in a lot across the street from her place of employment as she was instructed by her employer."

2. When questioned by the trial court regarding whether Veith's office had any "designated em-

¶ 9 Veith appealed to a three-judge panel, claiming, among other things, that the trial court erred in denying his "neutral risk defense" and in finding that Claimant was "instructed" to park in the Armorite lot. The three-judge panel affirmed the trial court's order, and Petitioners appeal.

## STANDARD OF REVIEW

¶ 10 Generally, the issue of whether a claimant's injury arose out of and in the course of employment is a question of fact for the Workers' Compensation Court and the any-competent-evidence standard of review applies. *City of Edmond v. Monday,* 1995 OK 132, ¶ 4, 910 P.2d 980, 982. However, where the relevant facts are undisputed, an appellate court reviews the lower court's decision as a matter of law, disturbing it only if the undisputed material facts do not support the Workers' Compensation Court's order. *See Fudge v. Univ. of Oklahoma,* 1983 OK 67, ¶¶ 7–10, 673 P.2d 149, 151–52.

## ANALYSIS

¶ 11 Petitioners here emphasize the fact that Veith did not own, control or maintain the parking lot and assert that the lower court erroneously concluded that Claimant's injury occurred on her employer's premises. Petitioners argue that the premises exception to the "going and coming rule" did not apply and, therefore, Claimant's injury did not arise out of and in the course of her employment and was not compensable under Oklahoma workers' compensation law.

¶ 12 It is well established that "a compensable work-related injury must *both* (1) occur *in the course of* and (2) *arise out of* the worker's employment." *American Mgt. Sys., Inc. v. Burns,* 1995 OK 58, ¶ 5, 903 P.2d 288, 290–91 (footnotes omitted). The phrase "in the course of employment" refers to the time, place or circumstances of the injury. *Id.* at ¶ 5 n. 3, 903 P.2d at 290 n. 3. The determination of whether an injury arises out of employment "contemplates a causal relationship between the act engaged in at the time injury occurs and the requirements of

ployee parking," counsel for Veith responded: "No. There's parking around the building."

employment." *Fudge*, 1983 OK 67 at ¶ 4, 673 P.2d at 150. If circumstances surrounding the employee's injury reflect a causal connection "between the encountered causative *risk* that resulted in the worker's harm and the *conditions of his/her employment*," compensation is proper. *Corbett v. Express Personnel*, 1997 OK 40, ¶ 7, 936 P.2d 932, 934 (footnote omitted).

¶ 13 Petitioners' defense to this claim is grounded upon the Oklahoma Supreme Court's analysis of three categories of "injury-causing risk" in *Odyssey/Americare of Oklahoma v. Worden*, 1997 OK 136, 948 P.2d 309. There, the Court explained that the risks an employee may encounter while in the course of employment include those that are (1) "solely connected with employment, which are compensable;" (2) "personal risks, which are not compensable;" and (3) "neutral risks, . . . which are neither distinctly connected with employment nor purely personal" but may result in compensable injury depending on the lower court's factual determination of whether, under the circumstances, the risk is employment related or personal. *Id.* at ¶ 6, 948 P.2d at 311. Relying on *Burns*, 1995 OK 58, 903 P.2d 288, Petitioners also argue that the Workers' Compensation Court erred as a matter of law in finding Claimant's injury compensable because the risk responsible for her injury was personal in nature and did not *rise above* the risk to which ordinary persons were exposed.[3]

¶ 14 In support of their argument that her injury resulted from a personal risk, Petitioners' appellate briefs emphasize the following: (1) Claimant's injury took place before she had commenced work at her assigned tasks; (2) Veith did not create the hazard that precipitated Claimant's injury and did not own, operate or control the parking lot; (3) Veith's "only instructions [to Claimant] regarding parking was [*sic* ] not to park in front of the law office;" and (4) Claimant's employment "exposed her to no more risk of injury from stepping in a hole in a public street than that encountered by any member of the general public." Petitioners' argument is faulty and incorrectly relies on *Odyssey/Americare* and *Burns* for the reasons set out in subsequent paragraphs.

¶ 15 First, Petitioners overlook the fact that employment includes the reasonable margin of time and space necessary to be used for ingress and egress to the place where the actual work is to be performed. *Max E. Landry, Inc. v. Treadway*, 1966 OK 259, 421 P.2d 829; *E.I. Du Pont De Nemours & Co. v. Redding*, 1944 OK 151, 147 P.2d 166. Generally, injuries sustained while going to and coming from work, when occurring on employer premises, are deemed to have arisen out of and in the course of employment. *Redding* at ¶ 9, 147 P.2d at 167. The Oklahoma Supreme Court has explained that an injury occurring under these circumstances arises out of and in the course of employment because "employment, within the meaning of the [Workers'] Compensation Act, does not begin and end with the actual work which the injured person was employed to do, but covers the period between his entering the employer's premises a reasonable time before beginning his actual work and his leaving the premises within a reasonable time after his day's work is done." *Greenway v. Nat'l Gypsum Co.*, 1956 OK 88, ¶ 7, 296 P.2d 971, 973. "The employment contemplate[s] [the claimant's] entry upon and departure from the premises as much as it contemplate[s] his working there, and must include a reasonable interval of time for that purpose." *Redding*, 1944 OK 151 at ¶ 13, 147 P.2d at 168 (quoting *Freire v. Matson Nav. Co.*, 19 Cal.2d 8, 118 P.2d 809, 810 (1941)).

¶ 16 Further, Petitioners' arguments rest on a narrow definition of the term "premises" that is not consistent with Oklahoma workers' compensation law. Oklahoma precedent does not require employer ownership or control over the area where a claimant was injured for it to qualify as a part of the employer's premises. *Turner v. B Sew Inn*, 2000 OK 97, ¶¶ 8–10, 18 P.3d 1070, 1072. In *Turner*, the employee of a retail establishment was injured when, upon arriving to

3. In both *Odyssey/Americare* and *Burns,* the injured employees were required to show an "increased risk"—one that exceeded *"the ordinary*

*hazards to which the general public is exposed."* *Burns*, 1995 OK 58 at ¶ 7, 903 P.2d at 292 (footnote omitted).

report to work, she slipped and fell while stepping from the shopping center parking lot onto a sidewalk. The employer's arguments against compensability in *Turner* were much the same as the arguments of Petitioners herein—including the assertion that it did not own or control the parking lot. *Id.* at ¶ 7, 18 P.3d at 1072.

¶ 17 In *Turner*, the Court found that the claimant's injury occurred "on what is deemed to be the employer's premises," *Id.* at ¶ 8, 18 P.3d at 1072, despite the fact that the employer did not own, control or maintain the lot. The Court noted that the claimant was in the lot pursuant to her work responsibilities, she was arriving to work in her customary manner at the beginning of the work day, her employer had acquiesced in her use of the lot, and her employer admitted that it did not want its employees to park in the spaces convenient for customers in front of the store entrance. *Id.* at ¶ 25, 18 P.3d at 1076. The Court concluded that the injury was compensable because: "[The claimant] was injured on the employer's premises while crossing the parking lot to enter her workplace in a customary manner known to and acquiesced in by the employer [and] the claimant's employment had a connection to the causative risk encountered." *Id.*

■ ¶ 18 There was evidence here that Veith wanted the closer parking spaces in front of his building to be left available for his law office clients. However, Petitioners point out that Claimant had the option of parking in the back of the law office, and attack the trial court's finding that Veith "instructed" Claimant to use the Armorite lot across the street, stating in their brief that "[C]laimant's only instructions regarding parking was [*sic*] not to park in the front of the law office." [4] In making this statement, Petitioners ignore Claimant's contradictory testimony that she had been instructed to park in the Armorite lot by Veith and her immediate supervisor. Credibility of witnesses and the effect and weight of conflicting testimony are questions of fact reserved

for determination by the lower court, not questions of fact for this Court on appeal. *Hackley v. Dalles Nursing Home*, 1962 OK 140, 372 P.2d 586. In any event, it was undisputed that Veith was aware that Claimant and another employee parked there daily, and that he acquiesced in their use of the lot. In this case, as in *Turner*, "the material fact questions relating to the claimant's presence in the parking lot and how her injury occurred were undisputed." *Turner*, 2000 OK 97 at ¶ 26 n. 21, 18 P.3d at 1077 n. 21 (emphasis added). The Court in *Turner* specifically noted that the employer had disputed whether the claimant was *required* to park in the particular area and whether she could have used another entrance, but the Court did not consider these to be issues of material fact. *Id.*

■ ¶ 19 Here, the record contains undisputed evidence that establishes some form of right, by law or by custom, for Veith to use the Armorite parking lot for his law office—a right which he passed to his employees and clients. Thus, as in *Turner*, the Armorite parking lot can be and is considered a part of the law office premises for purposes of workers' compensation coverage. *Id.* at ¶ 25, 18 P.3d at 1076. Accordingly, this Court rejects Petitioners' arguments against application of the premises exception to the "going and coming rule." This Court agrees with Claimant's assertion that the facts present a "classic 'parking lot' case," controlled by the rationale of *Fudge v. Univ. of Oklahoma*, 1983 OK 67, 673 P.2d 149.

¶ 20 The basic parking lot rule is stated as follows:

As to parking lots owned by the employer, or maintained by the employer for its employees, practically all jurisdictions now consider them part of the "premises," whether within the main company premises or separated from it. *The rule is by no means confined to parking lots owned, controlled, or maintained by the employer. The doctrine has been applied when the lot, although not owned by the employer,*

---

4. The photographs admitted into evidence show that the "front" of the office is a paved area, apparently with only a limited number of parking spaces, which were reserved for the firm's clients.

was exclusively used, or used with the owner's special permission, or just used by the employees of this employer.

1 Larson's Workers' Compensation Law § 13.04(2)(a) (2000)(emphasis added)(footnotes omitted). The treatise further explains that "[o]nce a parking lot has achieved, under these standards, the status of a portion of the employer's premises, compensation coverage attaches to any injury that would be compensable on the main premises." *Id.* at § 13.04(2)(b).

¶ 21 Petitioners attempt to distinguish *Fudge* by asserting that the employee in that case was exposed to the special hazard of *traffic* in crossing the street, while in the present matter, there was no special hazard or increased risk—Claimant "simply fell as a result of stepping into a hole in a public street." Petitioners urge this Court to find that this case is governed by *Odyssey/Americare* and *Burns,* apply the "increased risk" test and conclude that Claimant's injuries did not arise out of her employment. However, this Court disagrees with Petitioners' attempt to limit the holding in *Fudge* to situations where the claimant, who is a pedestrian, is struck by a vehicle when crossing the street. It is this Court's opinion that the holding in *Fudge* was not limited to the hazard of traffic, but instead stands for the proposition that, when a parking lot constitutes part of the employer's premises, an employee's injury sustained when traveling from the lot to reach the office and begin his/her work arises out of and in the course of employment. This is consistent with the general rule that "[b]y sponsoring parking in a lot not contiguous to the working premises, the employer has created the necessity for encountering the hazards lying between those two portions of the premises." *Larson* at § 13.01(2)(b).

¶ 22 On her route between the Armorite parking lot and the law office, Claimant necessarily had to cross the street. Thus, the injuries she sustained in crossing the street arose out of and in the course of her employment. *Fudge,* 1983 OK 67 at ¶ 6, 673 P.2d at 151 (citing *Swanson v. Gen. Paint Co.,* 1961 OK 70, 361 P.2d 842). *See also City of Edmond v. Monday,* 1995 OK 132, ¶ 9, 910

P.2d 980, 983. *Odyssey/Americare and Burns* are inapplicable, as neither case involved a claimant injured on the employer's premises. Moreover, the Oklahoma Supreme Court has made it clear that, when the employee's presence in the workplace parking lot is unquestionably employment related, there is "no need to apply the 'increased risk' test of *Odyssey/Americare.*" *Turner,* 2000 OK 97 at ¶ 13 n. 1, 18 P.3d at 1073 n. 1.

## CONCLUSION

¶ 23 The undisputed material facts of record support a finding that Claimant's injury resulted from exposure to a risk incident to her employment. The determination that Claimant is entitled to workers' compensation benefits is consistent with Oklahoma law. Accordingly, the judgment of the Workers' Compensation Court is sustained.

¶ 24 SUSTAINED.

GABBARD, P.J., and REIF, J., concur.