2013 OK CIV APP 68

Cecilia LEANDRO, Petitioner,

v.

AMERICAN STAFFCORP, INC., and the Workers' Compensation Court, Respondents,

and

Compsource of Oklahoma, Insurance Carrier.

No. 111,299.

Court of Civil Appeals of Oklahoma, Division No. 3.

May 31, 2013.

Terrel B. DoRemus, Bret A. Unterschuetz, Arthur H. Adams, P.C., Terrel B. DoRemus & Assoc., Tulsa, Oklahoma, for Petitioner.

Patrick S. Parr, Brandy L. Shores, Latham, Wagner, Steele, Lehman P.C., Tulsa, Oklahoma, for Respondents.

WM. C. HETHERINGTON, JR., Presiding Judge.

¶1 Cecilia Leandro (Claimant) seeks review of an order of the Workers' Compensation Court, sitting *en banc,* affirming an order of the trial court denying compensability for her injury. There was no dispute whether Claimant was injured, only whether her injury was incurred in the course of her employment. The Workers Compensation Court's order finding it was not so incurred is not against the clear weight of the evidence and that order is SUSTAINED.

*FACTS*

¶2 On April 13, 2012, Cecilia Leandro (Claimant) was employed by American Staffcorp, Inc. (American Staffcorp), a temporary staffing agency. She sustained an admitted injury to the third finger of her left hand due to a fall in the parking lot of Oil States Barlow Hunt (Oil States), a business where she had been assigned to work assembling parts by American Staffcorp. Claimant testified through an interpreter.

¶3 At the time of injury, Claimant had worked at Oil States for about two months. She clocked in at work at 5 a.m. After working for two hours, she was on a fifteen minute break and went outside to sit. She was thirsty and decided to retrieve a water bottle from her car, which was in a parking lot leased to Oil States and used as an employee parking lot. Claimant testified she went to get her own water bottle because the drinking fountain near her work area in the plant was malfunctioning by not draining properly. The plant did have restrooms and refrigerators. She claimed she did not go outside her area but had heard from other employees that there were vending machines in another building. There was a break room, but it did not have a water faucet. According to Claimant "[e]verybody takes their own water" to work. Normally, she brought her water bottle to her work area, but had not done so that day.

¶4 As she approached her car, Claimant caught her foot in a crack in the parking lot and she fell onto her hands. When she arose, she saw that her ring finger was "out of place." Supervisors from the plant took her to Saint Francis Hospital, where her hand was x-rayed. On April 17, 2012, she had surgery for a comminuted fracture of her left ring finger. After the surgery, her hand was placed in a cast. She was off work for period of time and had therapy.

¶5 Seth Brown (Brown), Oil State's health safety environmental coordinator, testified a water fountain was available immediately inside Claimant's work area and there were pop machines and water machines in a break room, as well as refrigerators for the employees to use. Ten feet away from the water fountain and around a corner, there was a sink in a hallway outside the break room. Brown testified the sink was used for hand washing, food preparation, and to fill cups of water. Styrofoam cups were available five feet away on shelves in the break room. He was unaware of any reports of problems on April 13, 2012, with the one water fountain in the area where Claimant worked. Most of the employees brought water jugs to work.

¶6 Oil States' facility is composed of six buildings, three of which are leased and three of which are owned by it. There are three separate parking lots and the buildings are entered by entrances from those lots. Brown testified that employees could "park elsewhere and get a ride" but that "if they're coming here, yes, they've got to park there in our parking lot." When asked if the parking lot was "under the control of Oil States," Brown replied, "No, we lease the building" and its upkeep and maintenance "would actually be the owners of the building." Brown agreed Oil States used the parking lot, the lot was provided for the benefit of employees, and that American Staffcorp had no control over the parking lot.

¶7 In an August 10, 2012 order, the trial court denied compensability because the injury occurred in an area where essential job functions are not performed, citing 85 O.S. § 312(6). Two judges of the Workers' Compensation Court, *en banc,* found the trial court's order was not against the clear weight of the evidence or contrary to law. A third member of the panel dissented, noting Claimant was on the clock on a mandated

break at the time of injury. This review proceeding followed.

## ANALYSIS

¶8 Section 312(6) of Title 85 sets forth conditions when an injury will be deemed to occur outside the course of employment. It provides, in pertinent part, that employment commences upon arrival at and terminates upon leaving the place of employment "excluding areas not under the control of the employer or areas where essential job functions are not performed." The parking lot was not owned or maintained by Oil States but the area was leased by it. As such, Oil States had some limited control of its own leased premises. However, this does not end our inquiry.

¶9 Claimant argues § 312(6) sets up a "two prong either/or test." She contends that when an injury occurs in an area under an employer's control, the issue of non-essential functions need not be reached at all. Claimant contends her injury occurred in the course of employment because she was on the clock and in the employee parking lot at the time. American Staffcorp argues Claimant's injury did not arise in the course of employment because she performed no essential job functions in the parking lot.

¶10 We reject Claimant's analysis of § 312(6). Section 312 provides that an injury is not compensable if it occurs in an area not under an employer's control *or* in an area where no essential job functions are performed. This disjunctive language establishes a simple either/or test for non-compensability, not a two-prong, *sequential* analysis under which application stops upon a failure to meet a first prong.

¶11 Claimant's injury was sustained in a parking area provided for employees. However, it has long been recognized that mere presence on an employer's premises is not determinative of compensability. Not all injuries on an employer's premises are compensable. *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, ¶5, 653 P.2d 201, 203. The phrase "in an area where no essential job functions are performed" adopted by the Legislature would be superfluous if *any*

injury on premises controlled by an employer was automatically deemed to be in the course of employment. We must interpret statutes in a manner which renders every word and sentence operative, not in a manner which renders a specific statutory provision nugatory. *In re Supreme Court Adjudication, Etc.,* 1979 OK 103, ¶7, 597 P.2d 1208, 1210.

 ¶12 Claimant's job was to assemble parts. Her decision to go to her car rather than to use employer-provided resources was in furtherance of an on-the-premises personal purpose or mission, not in furtherance of an essential job function. *Ogg v. Bill White Chevrolet Company,* 1986 OK 26, ¶7, 720 P.2d 324, 326. The order of the Workers' Compensation Court is not clearly against the weight of the evidence and it is **SUSTAINED.**

MITCHELL, J., and BUETTNER, J. (sitting by designation), concur.