2014 OK CIV APP 4

**Patricia Yvonne CARNEY, Petitioner,**

**v.**

**DIRECTV GROUP, INC.; Liberty Insurance Corporation & /or Liberty Mutual Insurance Company and the Workers' Compensation Court, Respondents.**

No. 111,189.

Court of Civil Appeals of Oklahoma, Division No. 2.

Nov. 22, 2013.

Richard S. Toon, Jr., Susan H. Jones, Cyrus N. Lawyer, Toon Osmond, P.L.L.C., Tulsa, Oklahoma, for Petitioner.

Bradley E. Bowlby, McGivern & Gilliard, P.C., Tulsa, Oklahoma, for Respondents.

JOHN F. FISCHER, Presiding Judge.

¶ 1 Claimant Patricia Yvonne Carney seeks review of an order of a three-judge panel of the Workers' Compensation Court, which affirmed the trial court's finding that her injury was not compensable. The single issue on appeal is whether Claimant sustained an accidental personal injury arising out of and in the course of her employment. After a review of the record and applicable law, we find that the panel's decision is both contrary to law and against the clear weight of the evidence and therefore vacate the decision.

## BACKGROUND

¶ 2 Claimant was employed by DirecTV Group as a customer service agent. She worked the night shift, generally from 5:00 p.m. to 1:30 a.m., and was allowed a 30–minute lunch break during her shift. On the

night of September 9, 2011, Claimant took her lunch break at 9:00 p.m. Although DirecTV had an on-site cafeteria, it was closed to night-shift employees. Because Claimant lived in a neighboring apartment complex, she walked across the DirecTV parking lot to go eat at home. After eating lunch, Claimant walked back to work. As she entered DirecTV's parking lot, she tripped over a parking-lot curb, hit her right shoulder on the bumper of a car parked on the lot and fell to the pavement. Claimant temporarily lost consciousness, and when she tried to get up, she realized her right arm was broken. Claimant was able to reach her cell phone and call DirecTV's parking lot security guard for help. She was transported by ambulance to the hospital for emergency treatment. Claimant eventually underwent surgery to repair her broken right arm.

¶ 3 Claimant filed her Form 3 on September 30, 2011, alleging injury to her right hand, arm, shoulder and both knees. She alleged the injury occurred because she "tripped and fell in parking lot coming to work." DirecTV denied that Claimant's injury arose out of and in the course of her employment.

¶ 4 Claimant was the only witness to testify at trial. She testified that DirecTV's parking lot is for employees only, and is monitored by a security guard twenty-four hours per day, seven days a week. When Claimant reported for her shift at DirecTV or returned from her lunch break, she was required to show her badge to enter the main door of the premises. Her manner of "clocking in" was to sit down at her desk and log in at her computer station. On the day of her accident, Claimant logged off the computer at her break time and exited through the main door of DirecTV's premises. Her injury happened after her lunch break, on her way back to work, as she engaged in her customary ingress to work.

¶ 5 According to Claimant's testimony, DirecTV was aware of the fact that its employees lived at the neighboring apartment complex and walked to and from work. She testified that when she first went to work for DirecTV in 2005, she was informed during new employee orientation that DirecTV employees choosing to live at that complex would be offered a discount on their rent. She testified that her supervisor was aware of the fact that she walked to work. "Almost everybody that I worked with knows that."

¶ 6 One of Claimant's exhibits at trial, admitted without objection, was a "Google Map" on which Claimant had highlighted her route back to DirecTV's premises and circled the place where she fell. That map shows the concrete curb bordering the northern edge of DirecTV's parking lot. Although the concrete border, which Claimant described as 3–4 inches high, discourages vehicle traffic between DirecTV's lot and the adjacent parking lots for the restaurant and apartment complex on the north, the barrier allows pedestrians to walk between the lots. Claimant testified that "you can just come and go. People ride their bikes through [DirecTV's lot] and everything."

¶ 7 On April 13, 2012, the trial court entered an order denying compensability based on its determination that Claimant's injury did not arise out of and in the course of her employment. The trial court based its determination on these findings:

–1–

THAT the claimant left the employer's premises (on foot) to eat lunch at her home. While returning to place of employment, the claimant tripped over a curb causing the claimant to fall and suffer injury.

–2–

THAT the route taken by claimant is not a marked ingress/egress location. The claimant took a "short-cut" through the back of respondent's parking lot, through other business properties to her street.

–3–

THAT the location of the incident is not an area where essential job functions are performed and therefore the injuries occurred outside the course of her employment pursuant to 85 O.S. 312(6).

Claimant appealed to a three-judge panel, which, with one judge dissenting, affirmed

the trial court's order.[1] Claimant now seeks review.

## STANDARD OF REVIEW

■ ¶ 8 "The standard of review applicable to a workers' compensation appeal is that which is in effect when the claim accrues." *Williams Cos., Inc. v. Dunkelgod*, 2012 OK 96, ¶ 18, 295 P.3d 1107, 1113. Title 85 O.S. 2011, § 340(D) became effective on August 26, 2011, and therefore is applicable to Claimant's September 2011 injury. In relevant part, the statute provides that the appellate court may "modify, reverse, remand for rehearing, or set aside the order or award upon any of the following grounds:"

1. The Court acted without or in excess of its powers;

2. The order or award was contrary to law;

3. The order or award was procured by fraud; or

4. The order or award was against the clear weight of the evidence.

■ ¶ 9 The issue of whether a claimant's injury arose out of and in the course of employment has historically been a question of fact for the Workers' Compensation Court. *See Turner v. B Sew Inn*, 2000 OK 97, n. 21, 18 P.3d 1070, 1077 n. 21 (citing *Lanman v. Oklahoma County Sheriff's Office*, 1998 OK 37, ¶ 6, 958 P.2d 795, 798). However, the material fact questions relating to Claimant's presence in the parking lot and how her injury occurred were undisputed.[2] "[W]here there is no conflict in evidence and no oppo-

site inferences may be drawn from undisputed proof, the question is one of law." *Id.* This court reviews conclusions of law by a *de novo* standard, performing an independent, non-deferential re-examination of the trial court's legal rulings. *Hogg v. Oklahoma County Juvenile Bureau*, 2012 OK 107, ¶ 5, 292 P.3d 29. If the undisputed facts do not support the workers' compensation court's order, the order will be vacated. *Greenway v. Nat'l Gypsum Co.*, 1956 OK 88, ¶ 0, 296 P.2d 971 (Syllabus 3).

## ANALYSIS

■ ¶ 10 In denying this claim, the trial court relied on its interpretation of one paragraph of Title 85 O.S.2011 § 312, which provides:

The following shall not constitute a compensable injury under the Workers' Compensation Code:

. . . .

6. An injury which occurs outside the course of employment. Employment shall be deemed to commence when an employee arrives at the employee's place of employment to report for work and shall terminate when the employee leaves the employee's place of employment, excluding areas not under the control of the employer or areas where essential job functions are not performed; provided, however, when the employee is instructed by the employer to perform a work-related task away from the employee's place

---

1. The dissent states:
 Claimant had arrived at her place of employment at the time of her injury. Arriving at one's place of employment is an essential job function of any employment.
 To hold otherwise would abrogate the exclusive remedy protection afforded employers from lawsuits against them for negligence on their own parking lots. This is a result which could not have been intended by the legislature.

2. DirecTV argues that Claimant was not required to leave the building on her break—"she might have brought a meal to her desk to enjoy on her lunch break." And, according to DirecTV, there were alternatives available to Claimant:
 While there has been testimony that the cafeteria was closed in the evening, there was no testimony that her supervisors ejected her from

the premises during her lunch break. Further, [Claimant] was not required to take that particular route to a) reach her home, where food was; b) her car, with which food could be accessed; or c) any of the restaurants within walking distance of the DirecTV building where she worked.
 In *Turner*, the employer disputed whether the claimant was required to park in a particular area, whether she could have used another entrance, whether she was required to take work home, and whether she was required to bring what she carried to work. However, the Supreme Court found "the record reflects that the material fact questions relating to the claimant's presence in the parking lot and how her injury occurred were undisputed." *Turner*, 2000 OK 97, n. 21, 18 P.3d 1070, 1077 n. 21.

of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the performance of job duties directly related to the task as instructed by the employer, including travel time that is solely related and necessary to the employee's performance of the task. . . .

(Repealed by Laws 2013, SB 1062, ch. 208, § 171, eff. February 1, 2014). The language in paragraph 6 was first adopted in 2010, *see* 85 O.S. Supp.2010 § 11(A)(5), and reenacted the following year. 85 O.S.2011 § 312(6).

 ¶ 11 Prior to 2010, a compensable injury in this regard was determined by 85 O.S. Supp.2005 § 3(13)(a): " 'Compensable injury' means any injury or occupational illness, causing internal or external harm to the body, which arises out of and in the course of employment if such employment was the major cause of the specific injury or illness." "Oklahoma's jurisprudence has long recognized that a compensable work-related injury must both (1) occur in the course of and (2) arise out of the worker's employment." *Am. Mgmt. Sys., Inc. v. Burns,* 1995 OK 58, ¶ 5, 903 P.2d 288, 290 (footnotes omitted). The "arising out of and in the course of employment" test was part of the original Worker's Compensation Act adopted in 1915. *See* Laws 1915, HB 106, ch. 246, art. 2, § 1. It has been consistently construed to provide compensation for injuries occurring "within the period of employment at a place where the workman reasonably may be and while he is reasonably fulfilling a duty of his employment or engaged in doing something incidental thereto." *Barnhill v. Smithway Motor Express,* 1999 OK 82, ¶ 11, 991 P.2d 527, 531 (denying recovery for injuries incurred by a truck driver on his last day of vacation while putting a personal item in an employer-owned truck). Section 312(6) addresses only the first element, the requirement that a compensable injury occur "in the course of" employment, and provides statutory guidance for determining that issue. Prior to the adoption of this language, the "in the course of" requirement was defined by judicial decisions.

 ¶ 12 As a general rule, injuries occurring while an employee was "on the way to or from his or her regular work" were not compensable. *Harris v. La Quinta,* 1997 OK 50, ¶ 2, 937 P.2d 89, 90 (describing the "going and coming" rule). " 'In the course of employment' relates to the time, place or circumstances under which the injury is sustained. It tests whether at the critical moment, the claimant was on a mission for the employer." *Yzer, Inc. v. Rodr,* 2012 OK 50, ¶ 5, 280 P.3d 323, 326. However, determining at what point an employee going to or coming from work was in the course of employment depended on the particular facts of the case.

¶ 13 In *E.I. du Pont De Nemours & Co. v. Redding,* 1944 OK 151, ¶ 12, 147 P.2d 166, 168, the Court held that a parking lot supervised by employer's guard and operated for the mutual benefit of the employer and its employees became part of the employer's premises. Consequently, the claimant's employment contemplated his entry upon and departure from the premises as much as it contemplated his working there, and included a reasonable interval of time for that purpose. *See Greenway,* 1956 OK 88, ¶ 7, 296 P.2d at 973 (noting that a person's employment "covers the period between [her] entering the employer's premises a reasonable time before beginning [her] actual work and [her] leaving the premises within a reasonable time after [her] day's work is done"). Following these authorities, we held: "[E]mployment includes the reasonable margin of time and space necessary to be used for ingress and egress to the place where the actual work is to be performed." *Veith v. Ogburn,* 2006 OK CIV APP 75, ¶ 15, 136 P.3d 1080, 1083 (citing *Max E. Landry, Inc. v. Treadway,* 1966 OK 259, 421 P.2d 829). These cases articulate what is sometimes referred to as the "parking lot rule" and provide that an employee injured during the time necessary to enter or leave the place of employment is injured in the course of employment and covered by the Workers' Compensation Act, unless the injury did not arise out of the employment.

¶ 14 A separate line of cases addressed the compensability of injuries occurring after the "course of employment" commences as determined by whether the injury "arose out of"

the employment. In some of those cases, recovery was authorized for injuries sustained while an employee was taking care of personal needs on the premises during the hours of employment because "work-connected activity reaches beyond the direct services performed and includes ministrations to the personal comfort and needs of employees." *Furr v. Wal–Mart,* 1998 OK CIV APP 147, ¶ 7, 966 P.2d 1193, 1195 (cited with apparent approval in *Barnhill* and holding that seeking and using employer's toilet facilities is a personal comfort mission that falls within the course of employment). However, recovery has not been authorized if the injury occurred while the employee was on a "purely personal mission." *Floyd v. Taco Mayo,* 2002 OK 58, 58 P.3d 197 (denying compensation for an injury that occurred on the employer's premises but after employee's shift had terminated and while she was still in the employer's premises but on a purely personal mission eating dinner). *See also Corbett v. Express Personnel,* 1997 OK 40, ¶ 11, 936 P.2d 932, 935 (denying benefits for an injury in employer's parking lot while employee was leaving to go to his bank on a personal mission); *Thomas v. Keith Hensel Optical Labs,* 1982 OK 120, 653 P.2d 201, 202 (denying compensation because employee was on a purely personal mission when injured in employer's parking lot when he left early for lunch to remove ice from his car); *White v. Milk Producers, Inc.,* 1972 OK 48, 496 P.2d 1172 (denying compensation to claimant, who fell on ice in employer's parking lot when she left work on a personal mission to help a car accident victim).

¶ 15 Despite this authority, the Workers' Compensation Court denied benefits to Claimant even though she was injured in DirectTV's parking lot after she had arrived at work and at a time when she was not on a personal mission. The Workers' Compensation Court's decision in this case requires that we determine whether the Legislature intended to abrogate the long-standing rules in the above-cited precedent, and particularly the parking lot rule, by enacting section 312(6). "A cardinal rule of statutory construction is to ascertain and give effect to the legislative intent." *Hogg v. Okla. County Juvenile Bureau,* 2012 OK 107, ¶ 7, 292 P.3d

29, 33. "Statutory words are to be understood in their ordinary sense, except when a contrary intention plainly appears. To ascertain legislative intent we look to the language of the pertinent statute." *Hess v. Excise Bd. of McCurtain County,* 1985 OK 28, ¶ 6, 698 P.2d 930, 932.

¶ 16 Section 312 defines six statutory circumstances that do not constitute "compensable injury under the Workers' Compensation Code," including injuries (1) caused by the willful intention of the employee; (2) incurred by the willful failure to use safety equipment; (3) occurring during the use of illegal drugs and (4) caused by a prank or horseplay. Subparagraph six, the dispositive provision in this case, adds to the previously described exclusions: "An injury which occurs outside the course of employment." This has been the law in Oklahoma since 1915. "Course of employment" is defined in the main clause of the second sentence of subparagraph 6 as commencing "when an employee arrives at the employee's place of employment to report for work" and continuing until the employee "leaves the employee's place of employment." Section 312(6). This definition is essentially consistent with the previous Oklahoma Supreme Court decisions defining course of employment. Consequently, injuries occurring before employment commences or after employment terminates are excluded as occurring outside the course of employment. However, some injuries occurring during the course of employment are also excluded. The second sentence of subparagraph 6 defines those as injuries occurring in "areas not under the control of the employer or areas where essential job functions are not performed."

¶ 17 The trial court construed the "essential job functions" portion of this sentence as excluding coverage for injuries occurring in areas controlled by the employer if the area where the injury occurred was not an area where essential job functions are performed. By doing so, the trial court necessarily construed the "essential job functions" exclusion as modifying a non-existent term, i.e., areas controlled by the employer. Although that is the antithesis of the first exclusion, "areas not under the control of the employer," lan-

guage pointing to areas controlled by the employer is not included in the statute. "[T]he general rule [of statutory construction] is that nothing may be read into a statute which was not within the manifest intention of the legislature as gathered from the language of the act." *Stemmons, Inc. v. Universal C.I.T. Credit Corp.*, 1956 OK 221, ¶ 19, 301 P.2d 212, 216. We find no traditional grammatical construction that supports the trial court's interpretation of section 312(6).

¶ 18 The subordinate clause "excluding areas not under the control of the employer or areas where essential job functions are not performed" depends on the main clause defining course of employment for its meaning, and its purpose is to modify the main clause.[3] "Course of employment" is defined in terms of arrival at and departure from the employees "place of employment" without limitation as to who controls the place of employment. Consequently, when properly construed, the subordinate clause in the second sentence must be read to exclude injuries occurring in "areas not under the control of the employer or areas where essential job functions are not performed," even if the injury occurs during the course of employment. Consequently, "areas where essential job functions are not performed" modifies the definition of "course of employment" in the main clause and provides an additional description of areas where non-covered injuries occurring during the course of employment may occur.[4]

¶ 19 *Leandro v. Am. Staffcorp., Inc.*, 2013 OK CIV APP 68, — P.3d —, 2013 WL 3722562, is the first published case applying the language of section 312(6). The *Leandro* Court held:

> Section 312 provides that an injury is not compensable if it occurs in an area not under an employer's control or in an area where no essential job functions are performed. This disjunctive language establishes a simple either/or test for non-compensability, not a two-prong, sequential analysis under which application stops upon a failure to meet a first prong.

*Id.* ¶ 10, — P.3d at —. We agree with the *Leandro* Court's construction of section 312(6). The phrase "or areas where essential job functions are not performed" is part of an "either/or test." To hold as the trial court did would establish within any area controlled by the employer a zone in which injuries occurring to workers are not covered by the Workers' Compensation Code because essential job functions are not performed there. We find no support for that construc-

---

**3.** Michael Strumpf and Auriel Douglas, *The Grammar Bible* 240 (2004).

**4.** Elements of a sentence joined by the coordinate, disjunctive conjunction "or" may describe terms that are in opposition to each other or they may describe alternative elements. *See The New Shorter Oxford English Dictionary* 694 (1993 ed.); *Gearinger v. Lee*, 266 Ga. 167, 465 S.E.2d 440 (1996) ("or" may be used as a reiterative term); *State v. Ramsey*, 311 S.C. 555, 430 S.E.2d 511 (1993) ("or" may be used as a coordinate conjunction introducing a synonymous word or phrase, or it may join different terms expressing the same idea or thing). We find that it is the latter sense used here where "or" joins alternative descriptions of areas where injuries occurring after the commencement of employment will not be covered by the Workers' Compensation Code. "The use of the disjunctive usually indicates alternatives and requires that those alternatives be treated separately." 1A *Sutherland Statutory Construction* § 21:14 (7th ed.)(database updated Nov. 2012). Although the subordinate clause as written is susceptible to ambiguity, we find no discernable Legislative intent to abrogate long-standing judicial rules of determining com-

pensability pursuant to the Workers' Compensation Code. "Where an ambiguity exists as to legislative intent, this Court should invoke the construction which is most reasonable." Likewise, the trial court's construction, for the reasons discussed in this Opinion, would expose employers to traditional tort liability they have previously been protected from by the Code. "Statutory construction which would lead to an absurdity must be avoided; rational constructions are preferred if language fairly permits." *LeFlore v. Reflections of Tulsa, Inc.*, 1985 OK 72, ¶ 8, 708 P.2d 1068, 1075. Consequently, the subordinate clause of the second sentence of section 312(6) provides two alternative although similar descriptions of areas where injuries occurring during the course of employment will not be covered by the Workers' Compensation Code. The difference may not be readily discernable, that, however, is the province of the Legislature. *City of Tulsa v. State ex rel. Pub. Emps. Relations Bd.*, 1998 OK 92, ¶ 14, 967 P.2d 1214, 1220 (citations omitted) ("[I]t is within the legislative body's prerogative to define words or phrases appearing in legislative enactments, and where a statute contains a definition, that definition is binding on the courts").

tion in the historical context predating the enactment of section 312(6) or the future consequences that would result from that construction.

¶ 20 First, the fundamental definition of "compensable injury" remains unchanged after the enactment of section 312. *See* 85 O.S.2011 § 310(A). Consequently, so too does the existing precedent determining what injuries arise out of and in the course of employment. "Failure of the Legislature to change the law for a long period of time after judicial construction thereof amounts to Legislative approval and ratification of the construction placed upon the statute by the Court." *Couch v. Int'l Bhd. of Teamsters,* 1956 OK 239, ¶ 6, 302 P.2d 117, 119.

¶ 21 Second, other than the first three subparagraphs of section 312, which were included in the 1915 version of the Workers' Compensation statutes, the remaining provisions codify previously established judicial interpretations of the "arising out of and in the course of" requirement. Subparagraph 4 was adopted in 1997 and preserves the "horseplay" rule. *See, e.g., Horn v. Broadway Garage,* 1940 OK 81, 99 P.2d 150. Consistent with subparagraph 5 added to section 312 in 2011, the Court in *Leonhardt Enterprises v. Houseman,* 1977 OK 51, 562 P.2d 515, recognized that termination of employment is not determined by formalities: " 'the relation is not terminated where a discharged employee remains on, or returns to, the premises to receive his pay or to complete his work....' " *Id.* ¶ 15, 562 P.2d at 519 (quoting 99 C.J.S. *Workmen's Compensation* § 63 (1958)). Subparagraph 5 excludes injuries: "occurring at a time when employment services were not being performed ... after the employment relationship was terminated." Third, the proviso in subparagraph 6:

> provided, however, when the employee is instructed by the employer to perform a work-related task away from the employee's place of employment, the employee shall be deemed to be in the course of employment when the employee is engaged in the performance of job duties directly related to the task as instructed by the employer, including travel time that is solely related and necessary to the employee's performance of the task....

preserves the "special mission rule" articulated by the Supreme Court in *Stroud Mun. Hosp. v. Mooney,* 1996 OK 127, 933 P.2d 872, almost fifteen years before the enactment of section 312(6). Consequently, from the Legislature's pattern of codifying judicial definitions of "compensable injury," we cannot discern an intent to depart from long-standing judicial interpretation of the "course of employment" requirement by the enactment of section 312(6).

¶ 22 In addition, the trial court's interpretation would have consequences the Legislature could not have intended. An employee injured during the course of employment in a parking lot would be covered by the Code if the employer owned the parking lot while an identically situated employee injured in a parking lot not owned by the employer would not be covered. This result is avoided only if an employer's parking lot is defined as an "area where essential job functions are not performed." That construction would abrogate the parking lot rule. If the legislature had intended to abrogate the parking lot rule, it could have done so simply and expressly rather than by defining an employer's parking lot as an area "where essential job functions are not performed." "We presume that the Legislature intends what it expresses." *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800, 803 (footnote omitted).

¶ 23 The trial court's construction would also lead to incongruous results. For example, an employee injured during an employer's "tent sale" in the employer's parking lot would be covered by the Code even though the sale was a temporary event. It follows that an employee injured while walking across the parking lot to assist in that event would be covered as well. The trial court's construction, however, would deny coverage to employees injured walking to and from work in the same parking lot but while a tent sale was not being conducted. It would also deny coverage to a worker employed as a truck driver injured while walking from the worker's personal vehicle to the employer's office, but cover an injury if it occurred while

the worker, after "clocking in," was walking across the same parking lot to the employer's vehicle to begin work. The multiplicity of inconsistent results from this interpretation is not permissible. "[S]tatutory construction that would lead to an absurdity must be avoided and a rational construction should be given to a statute if the language fairly permits." *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Comm'n,* 1988 OK 117, ¶ 7, 764 P.2d 172, 179.

¶ 24 Finally, the trial court's interpretation would abrogate the personal comfort exception. Pursuant to that rule, an employee injured at work on the employer's premises but not while performing job duties is covered by the Code if the employee was on a personal comfort mission. Likewise, an employer's exposure for that injury is limited. "The liability prescribed in this act shall be exclusive and in place of all other liability of the employer and any of his or her employees, at common law or otherwise, for such injury, loss of services, or death, to the employee...." 85 O.S.2011 § 302(A). The trial court's interpretation would eliminate the exclusive remedy provision of the Code and expose an employer to traditional tort liability for any employee injured while at work in an area "where essential job functions are not performed." That is a result we do not think the Legislature intended, and that we cannot discern from the language of section 312(6). Consequently, we conclude that the Legislature did not intend to abrogate the pre-section 312 line of authority regarding employer-controlled parking lot injuries.

¶ 25 Nonetheless, the trial court found, and the majority of the panel agreed, that Claimant was not in the course of her employment and not entitled to compensation because "the location of the incident is not an area where essential job functions are performed." For the reasons previously stated, the trial court's determination that the Claimant's injury was not compensable because it did not occur in a place where "essential job functions are performed" is against the clear weight of the evidence and is contrary to long-established Oklahoma law.

¶ 26 And, although we agree with the *Leandro* Court's interpretation of section 312(6), the facts in that case are distinguishable.[5] The claimant in *Leandro,* like Claimant herein, was injured as a result of a fall in a parking lot. However, "[Leandro's] decision to go to her car rather than to use employer-provided resources was in furtherance of an on-the-premises personal purpose or mission, not in furtherance of an essential job function." *Leandro,* 2013 OK CIV APP 68, ¶ 12, —— P.3d at —— (citing *Ogg v. Bill White Chevrolet Co.,* 1986 OK 26, ¶ 7, 720 P.2d 324, 326).[6] Although we conclude that

---

5. Four other cases have been decided by this Court interpreting the language of section 312(6): *K–Mart Corp. v. Flores,* Case No. 111,-574, 8, (Okla.Ct.App. Sept. 13, 2013) (vacating the trial court's order authorizing medical treatment to claimant, who fell on the sidewalk while walking to an employer designated and controlled smoking area to take an on-the-clock smoke break, because there were "no essential job functions performed in the area where she fell" and smoke breaks, although permitted, "[were] not incidental to the requirements of her employment"); *Dillard's, Inc. v. Hyroop,* Case No. 111,057 (Okla.Ct.App. May 31, 2013), *cert. denied* (sustaining the compensation court's finding of compensability for injuries sustained by department store employee who, after clocking out for her lunch break, fell in loading bay area while exiting building); *L.E. Jones Drilling Co. v. Hodge,* Case No. 110,859, 315 P.3d 1025, 2013 WL 6834975 (Okla.Ct.App. April 19, 2013), *cert. denied* (sustaining grant of benefits to "tool pusher" claimant, who suffered injuries in an automobile accident while driving company car en

route back to well site after retrieving clean clothes from home); *Intermedix Corp. v. Wolf,* 2013 OK CIV APP 82, ¶ 8, 313 P.3d 287 (vacating the trial court's order authorizing medical treatment to claimant, who after clocking out to leave her third-floor place of employment, fell while descending staircase common to commercial building tenants, because staircase area was "not owned or maintained by [her] employer and" "[she] performed no essential job duties" there).

6. In *Ogg,* the claimant had left his office to get cigarettes from an employer-provided truck, which was parked on the employer's premises, when he fell and injured himself. In denying compensation, the trial court found that the injury did not arise out of or occur in the course of the employment. The Supreme Court sustained the trial court's order because "[t]he use of tobacco is not necessarily incidental to the requirements of the claimant's employment ... [and] his on-the-premises errand was in furtherance of some personal purpose and, therefore, not within

the personal mission exception to the parking lot rule remains intact after the enactment of Section 312(6), we find that it is not applicable in this case.

¶ 27 Claimant was the only witness at trial. She testified that to begin work she necessarily had to cross the parking lot, enter the building, get to her cubicle, sit down and log on to her computer. She testified that because DirecTV's cafeteria was closed during her night shift it was necessary for her to leave the premises in order to eat lunch. Her injury occurred in the parking lot while she was returning to work after finishing her lunch. It is undisputed that DirecTV controlled the parking lot where Claimant fell. Claimant asserts, therefore, that the Workers' Compensation Court incorrectly applied section 312(6). DirecTV argues that the Workers' Compensation Court correctly applied that statute when it determined that an employee entering the work place to begin work may not recover workers' compensation benefits for injuries received in the parking lot because in doing so the employee is not in an area where essential job functions are performed. Claimant's position is supported by controlling precedent and a proper construction of Section 312(6); DirectTV's position is not. Claimant's injury occurred after she had arrived at her place of employment and before that employment was terminated.

### CONCLUSION

¶ 28 The trial court's determination that DirecTV's parking lot is not an area where essential job functions are performed contravenes long-established precedential authority holding that an employee's work begins when the employee arrives in an employer's parking lot. That authority was not abrogated by the enactment of section 312(6). Claimant's injury occurred on DirecTV's premises. Claimant had arrived at her place of employment to begin her work after returning from her scheduled lunch break and was not on a personal mission when she was injured. The order of the Workers' Compensation Court denying compensability is vacated, and this case is remanded for further proceedings consistent with this Opinion.

the purview of the Act." *Id.* ¶ 6–7, 720 P.2d at 325–26.

¶ 29 **VACATED AND REMANDED FOR FURTHER PROCEEDINGS.**

BARNES, V.C.J., concurs, and WISEMAN, J., concurs in result.